Argued and submitted January 17, affirmed December 19, 2012, petition for review denied May 30, 2013 (353 Or 714)

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## WILLIAM THOMAS ROPER,
*Defendant-Respondent.*

Josephine County Circuit Court
09CR0210; A147163

294 P3d 517

Doug M. Petrina, Senior Assistant Attorney General, argued the cause for appellant. With him on the briefs were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Ryan Scott argued the cause and filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

After defendant was charged with a number of counts related to the manufacture, delivery, and possession of marijuana and methamphetamine, and felon in possession of a firearm, the trial court granted his motion to suppress evidence based on the officers' warrantless search of defendant's premises. The state appeals, arguing that the trial court erred in granting defendant's motion to suppress because defendant did not manifest a clear intent to exclude visitors from using his driveway. In light of all the circumstances, we conclude that there is sufficient evidence to support the trial court's findings and that the trial court did not err in granting defendant's motion to suppress. Accordingly, we affirm.

The trial court's findings of fact are binding if there is constitutionally sufficient evidence in the record to support those findings. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We review to determine whether the court correctly applied legal principles to those facts. *Id.*

We describe the facts consistently with the court's findings and the record. Defendant's property is in a rural part of Josephine County. He has a four to five foot boundary fence around his property, with a gate across the driveway. Approximately four feet to the left of defendant's driveway is a "No Trespassing" sign. To the right of the gate, farther away than the sign on the left, is another sign that also says, "No Trespassing." On the gate, there is a sign that says,

"POSTED

"NO TRESPASSING

"KEEP OUT"

In March 2009, four officers, in marked and unmarked police cars, went to defendant's house to discuss information that he was growing marijuana on his property. The officers arrived in the early afternoon. The officers did not have a search warrant. The gate to defendant's driveway was open, so the sign on the gate was only visible from the back. The officers did not see the "No Trespassing" signs.

One officer noticed a sign on the gate, but could not see what was on it because it was facing away.

The officers drove up the driveway. Two officers went to the front door and two officers went to the back door. The officers who went to the front door identified themselves as police. A male voice called out, "Who is it?" The officers identified themselves as police officers and the voice responded something to the effect of "[j]ust a minute." Defendant left through the back door. The officers at the front door joined defendant and the other officers at the back door. From there, the officers heard fans and smelled growing marijuana. Defendant admitted that he did not have a valid medical marijuana card and said that he was growing two plants. Defendant consented to a search of his property. The officers found marijuana plants, processed marijuana, methamphetamine, methamphetamine paraphernalia, and 16 firearms.

Defendant was charged with unlawful manufacture of marijuana, ORS 475.856, unlawful delivery of marijuana, ORS 475.860, unlawful possession of marijuana, ORS 475.864, unlawful possession of methamphetamine, ORS 475.894, 16 counts of felon in possession of a firearm, ORS 166.270, four counts of theft in the first degree, ORS 164.055, and criminal forfeiture, ORS 131.582.

Defendant filed a motion to suppress, arguing that the officers trespassed when they entered his property and, consequently, all evidence obtained from the search was a product of that illegal search. After a hearing on defendant's motion to suppress, the court found that, in some of the exhibits, the "No Trespassing" signs appeared obscured, but "other exhibits demonstrated the signs were clearly posted." The court found that the officers were credible in their testimony that they did not see the "No Trespassing" signs and were concerned with their safety. However, the court found that the officers failed to use due diligence when they did not see the signs.

In addition, the court found that having a "No Trespassing" sign within four feet of a front gate gives notice to the public that the owner does not want others to come up the driveway. The court added that "a normal,

reasonable person in that situation would \*\*\* have seen those two signs and at the very least would have stopped and looked at the other side of the gate to see what the \*\*\* other sign said, \*\*\* which turned out to be a no trespassing sign." The court concluded that the officers trespassed when they drove up defendant's driveway and, therefore, granted defendant's motion to suppress. The state appeals.

The sole issue on appeal is whether the trial court erred in granting defendant's motion to suppress. The state asserts that the trial court erred in granting defendant's motion to suppress because the "No Trespassing" signs were insufficient to show that defendant intended to exclude the public from entering his property. Defendant contends that the signs were sufficient to show his intent to exclude and, accordingly, the court did not err in granting his motion to suppress. We agree with defendant.

Article I, section 9, of the Oregon Constitution provides,

> "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

A search is an intrusion by an officer into the protected privacy interest of an individual. *State v. Rhodes*, 315 Or 191, 196, 843 P2d 927 (1992). A warrantless search is *per se* unreasonable. *State v. Unger*, 252 Or App 478, 481, 287 P3d 1196 (2012). "A person who wishes to preserve a constitutionally protected privacy interest in land outside the curtilage must manifest an intention to exclude the public by erecting barriers to entry, such as fences, or by posting signs." *State v. Dixson/Digby*, 307 Or 195, 211-12, 766 P2d 1015 (1988). "[T]he law assumes that, absent evidence of an intent to exclude, an occupant impliedly consents to people walking to the front door and knocking on it, because of social and legal norms of behavior." *State v. Portrey*, 134 Or App 460, 464, 896 P2d 7 (1995). We consider all surrounding circumstances to determine the residents'

intent. *State v. McIntyre Pereira*, 123 Or App 436, 440, 860 P2d 299 (1993), *rev den*, 318 Or 351 (1994).

The state relies on *State v. Gabbard*, 129 Or App 122, 877 P2d 1217, *rev den*, 320 Or 131 (1994), and *State v. Gorham*, 121 Or App 347, 854 P2d 971, *modified on recons*, 123 Or App 582, 859 P2d 1201, *rev den*, 318 Or 171 (1993), to argue that defendant did not demonstrate sufficient intent to exclude the public from his property. However, the facts in *Gabbard* and *Gorham* are not like the facts in this case. In *Gabbard*, the defendant had signs near the beginning of his driveway that said "Beware of Dog" and "Keep Out," but, unlike here, those signs were not immediately adjacent to the driveway and the officers entering the defendant's property did not see them. 129 Or App at 124. The officer did see a "No Trespassing" sign on a boundary fence, but the court concluded that

> "the 'No Trespassing' sign on the boundary fence, alone, was inadequate to exclude visitors who would use the driveway to make contact with the occupants of the house. A reasonable visitor could have assumed that the sign was intended only to exclude those who might put the property to their own uses, but that it did not apply to visitors who desired to contact the residents."

*Id.* at 128. Similarly, in *Gorham*, we concluded that there was sufficient evidence to support the trial court's finding that "the no trespass signs on the adjacent field did not establish that defendant intended to restrict access to his driveway." 121 Or App at 353. In addition, in *Gorham*, there was a fence separating the field from the defendant's driveway, and the gate to the driveway was open. *Id.*

Here, the trial court found that a reasonable person would have seen the "No Trespassing" signs. Although the gate to defendant's property was open, he did have a fence around the property. In light of all the circumstances, we conclude, as a matter of law, that defendant objectively manifested intent to exclude the public, and that the trial court did not err in granting defendant's motion to suppress. *See, e.g., State ex rel Juv. Dept. v. Reeves*, 163 Or App 497, 499-501, 988 P2d 433 (1999) (holding that, where defendant's property was fenced and had three "Keep Out - No

Trespassing" signs as well as a sign stating "Private Road No Unauthorized Persons Beyond This Point," defendant had provided sufficient evidence of intent to exclude the public from the property); *State v. Poulos*, 149 Or App 351, 356-57, 942 P2d 901 (1997) (concluding, based on multiple signs, it was clear that defendant intended to exclude the public from his property); *See also Towe v. Sacagawea, Inc.*, 246 Or App 26, 35-37, 264 P3d 184 (2011), *rev allowed*, 352 Or 33 (2012) (holding that a sign at the road entry stating "Private Road No Trespassing" indicated that the owner did not want the public to use the road).

Whether the signs on an individual's property are sufficient to manifest intent to exclude the public depends on the factual circumstances in each case. For example: How far are the signs from the entrance to the property? How large is the type on the signs? Were the signs obvious or obscured? Did the officers notice the signs? Did the officers look for the signs? We are bound by the trial court's factual findings. *Ehly*, 317 Or at 75. As described above, the trial court's factual findings are consistent with its conclusion that defendant's signs established defendant's intention to protect his privacy and exclude the public. There is constitutionally sufficient evidence in the record to support the trial court's findings.

Affirmed.