STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

IVAN CAM,
*Defendant-Appellant.*

Marion County Circuit Court
08C49052; A142984

296 P3d 578

Ryan Scott argued the cause and filed the brief for appellant. Ivan Cam filed the supplemental brief *pro se.*

Jamie K. Contreras, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

After a jury trial, defendant was convicted of 53 offenses, including 41 counts of theft in the first degree, ORS 164.055; one count of theft in the second degree, ORS 164.045; seven counts of possession of a stolen vehicle, ORS 819.300; two counts of delivery of methamphetamine (a Schedule I controlled substance); ORS 475.840 (2009);[1] possession of methamphetamine (charged as a commercial drug offense), ORS 475.894; ORS 475.900(1)(b); possession of marijuana (charged as a commercial drug offense), ORS 475.864; ORS 475.900(1)(b); possession of MDMA[2] (charged as a commercial drug offense), ORS 475.874; ORS 475.900(1)(b); and unlawful possession of a short-barreled shotgun, ORS 166.272. He appeals, raising 15 assignments of error. His first two assignments relate to the trial court's denial of motions to suppress evidence seized from defendant's residence. The remaining 13 assignments relate to the commercial drug offense (CDO) classifications, merger of guilty verdicts, and sentencing. With the exception of one contention relating to merger of some of the theft guilty verdicts, we reject his remaining assignments.

We first set forth the facts relating to defendant's motions to suppress. In December 2007, a homeowner reported a burglary and the theft of his car.[3] After the homeowner's report of the theft, the car was involved in a hit-and-run accident on December 14, 2007. On December 24, a Hubbard police officer found the car and arrested its driver, Martel, who said that she lived with defendant and that the title and registration application for the car were at defendant's home. Martel told officers that she had accompanied defendant to the Woodburn branch of the Driver and Motor Vehicle Services Division (DMV) to register the car, but that for some reason DMV had rejected the title.

On the morning of December 26, 2007, detectives Abel, Elmore, and Johnson of the Salem Police Department

---

[1] ORS 475.840 is now numbered ORS 475.752. Or Laws 2009, ch 898, § 1.

[2] MDMA is 3, 4—methylene dioxymethamphetamine, also colloquially known as "ecstasy."

[3] The car was a 2006 Nissan 350Z, which is a distinctive sports car.

drove an unmarked police vehicle to defendant's house. The house was in a rural area and located at the end of a gravel driveway. The detectives turned onto the driveway through an open metal gate that was located a short distance from the road. See photograph attached as Appendix 1. Further down the gravel driveway there were three signs. On a tree next to the driveway, there was a sign that read "PRIVATE PROPERTY," and above it, a sign that read "10 M.P.H." Near the tree, on a metal pipe, was a sign that read "PRIVATE PROPERTY." See photograph attached as Appendix 2. The detectives did not recall initially seeing the signs, but Johnson remembered seeing the signs during the course of subsequent investigation. The detectives followed the driveway to the residence and parked near a shop on defendant's property. There were several people in the area. The detectives, who were in plainclothes, asked for defendant; the detectives were told that defendant was at the house. The detectives walked to the residence and recognized defendant. Abel asked to speak to him privately. Defendant directed the detectives to a sauna at the east of the house. Abel and Elmore went into the sauna with defendant, and Johnson remained outside the sauna. Abel described to defendant the circumstances of the stolen car, and asked defendant if he had any documents relating to his purchase of the car. Defendant said that he had the documents in the house. The detectives asked if defendant was willing to show them the documents. Defendant then invited the detectives to follow him to the house, which they entered through the garage. Defendant showed the detectives his documents. Abel asked for and received permission to walk through the residence to look for other stolen property.

As he was walking through the house, Abel saw items that he suspected were stolen and asked for and received defendant's permission to call in the serial numbers. None of those items had been reported stolen. Defendant and the detectives then agreed that the detectives would accompany defendant to his bank to see if his check for the car had cleared. As they were leaving the house through the garage, Abel noticed a four-wheeler, which defendant said belonged to his nephew. On the way to the bank, detectives called in

the serial number for the four-wheeler and learned that it had been reported stolen.

When they arrived at the bank, detectives arrested defendant. Police subsequently sought and obtained two warrants to search defendant's property. Execution of the search warrants resulted in the seizure of narcotics.

Defendant moved to suppress evidence seized subsequent to the warrantless entry of his property, contending that the "private property" sign and gate on the driveway manifested a clear intent to exclude visitors, including the police. *See State v. Dixson/Digby*, 307 Or 195, 211, 766 P2d 1015 (1988) ("A person who wishes to preserve a constitutionally protected privacy interest in land outside the curtilage must manifest an intention to exclude the public by erecting barriers to entry, such as fences or by posting signs."); *State v. Gabbard*, 129 Or App 122, 126-27, 877 P2d 1217, *rev den*, 320 Or 131 (1994). In an April 2009 written ruling, the trial court denied the motion because defendant had consented to a search of the house. In a May 2009 ruling from the bench, the trial court found that defendant had allowed the entry onto his property and held that defendant had not manifested a clear intent to exclude visitors. The trial court also denied defendant's motion to suppress evidence seized after the execution of two search warrants that were based on the evidence found during the warrantless search. Defendant's first two assignments of error relate to those rulings. We review the trial court's rulings for errors of law, deferring to the trial court's findings of fact that are supported by constitutionally sufficient evidence in the record. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

Article I, section 9, of the Oregon Constitution provides:

> "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be search, and the person or thing to be seized."

The Oregon Constitution protects a person's privacy interest in the curtilage of his or her residence; however, a person impliedly consents to visitors approaching the front door unless the person has "manifested an intent to forbid the intrusion of casual visitors onto the property." *Gabbard*, 129 Or App at 126-27. We consider all the surrounding circumstances to determine the resident's intent. *State v. McIntrye/Pereira*, 123 Or App 436, 440, 860 P2d 299 (1993), *rev den*, 318 Or 351 (1994).

Defendant asserts that the combination of the gated driveway and the "PRIVATE PROPERTY" signs manifested his intent to exclude uninvited visitors. The state responds that, although the gate, which was open, and the private property sign may have been sufficient to signal to approaching visitors that they were no longer on a public road, they were not sufficient to warn visitors that they were not authorized to proceed. The state contends that a sign that identifies property as private does not, as a matter of law, manifest a clear intent to exclude casual visitors.

We agree with the state that, under the circumstances, defendant's intent to exclude visitors from his property was not manifest. The state correctly notes that the posting of a sign indicating that property is private does not in and of itself suggest that visitors to the property are excluded. As we said in *Gabbard*, in order to exclude the casual visitor from approaching a residence, "a person must make a greater showing than that which would be required to exclude individuals who would use the property for their own purpose, such as hiking." 129 Or App at 127. As we recently stated in *State v. Roper*, 254 Or App 197, 200, 294 P3d 517 (2012), each case depends on its factual circumstances. In *Roper*, we affirmed the trial court's grant of a motion to suppress evidence where the circumstances included two no trespassing signs and another sign that read "Posted, No Trespassing and Keep Out." Considering all of the circumstances in this case, including the open gate and the absence of a no-trespassing sign, we conclude that the trial court correctly held that the gate and the private property signs did not manifest defendant's clear intent to exclude visitors.

The warrantless entry to defendant's property was permissible. Thereafter, the officers entered the house with defendant's consent.[4] The trial court therefore did not err in denying defendant's motion to suppress.

Defendant was charged with possession of eight grams or more of methamphetamine (Count 54). Defendant's third and fourth assignments of error relate to the charging of two additional possession offenses, possession of marijuana (Count 55) and possession of MDMA (Count 56), as commercial drug offenses (CDOs), based on defendant's possession of "[eight] grams or more of methamphetamine." ORS 475.900(1)(b)(K)(iii). Defendant contends that "the legislature never intended substantial quantities of one drug (methamphetamine) to enhance the sentence on possession of another substance (marijuana and MDMA)." According to defendant, a particular enhancement factor is only available for possession of the same controlled substance, but in a larger amount cannot be used to enhance other drug possession offenses. Defendant therefore argues that the trial court erred in denying his motion to strike the commercial drug offense factor of possession of eight grams or more of methamphetamine. We conclude that the trial court did not err.

As relevant, ORS 475.900(1)(b) provides that

"a possession, delivery or manufacture [offense] is a commercial drug offense * * * if it is accompanied by at least three of the following factors:

"* * * * *

"(D)   The offender was in possession of materials being used for the packaging of controlled substances such as scales, wrapping or foil, other than the material being used to contain the substance that is the subject of the offense;

"* * * * *

"(F)   The offender was in possession of stolen property;

"* * * * *

"(K)   The offender was in possession of controlled substances in an amount greater than:

---

[4] We reject defendant's contention, made in his *pro se* supplemental brief, that defendant's consent to the detectives' entry of the house was involuntary.

"* * * * *

"(i) Eight grams or more of a mixture or substance containing a detectable amount of heroin;

"(ii) Eight grams or more of a mixture or substance containing a detectable amount of cocaine;

"(iii) Eight grams or more of a mixture or substance containing a detectable amount of methamphetamine;

"(iv) Eight grams or more of a mixture or substance containing a detectable amount of hashish;

"(v) One hundred ten grams or more of a mixture or substance containing a detectable amount of marijuana[.]"

In Counts 55 and 56, the state charged defendant with possession of marijuana and possession of MDMA, respectively. Both counts were charged as CDOs, based on ORS 475.900(1)(b)(D), (F), and (K)(iii). Defendant challenges only the state's reliance on the factor set forth in subsection (1)(b)(K)(iii)—possession of eight grams or more of a mixture or substance containing a detectable amount of methamphetamine—to enhance the offenses of possession of marijuana and possession of MDMA.[5] In defendant's view, the structure of ORS 475.900 shows that the enhancement "subfactors" set out in paragraphs (b)(K)(i) to (viii) serve to enhance only the possession, delivery or manufacture charges for the particular named substances. So, for example, in defendant's view, his possession of eight or more grams of methamphetamine could serve only to enhance a possession, delivery or manufacture of methamphetamine charge, and cannot enhance offenses involving marijuana or MDMA. Defendant contends that his possession of eight grams or more of methamphetamine (Count 54) cannot be used to elevate his possession of marijuana and MDMA to commercial drug offenses and that the trial court therefore erred in denying his motion to strike those two CDO enhancement factors.

The state responds that the statute plainly allows possession of any of the listed controlled substances

---

[5] Defendant does not contend that the other factors charged by the state—possession of drug packaging materials and stolen property—did not apply.

in sufficient quantities to serve as enhancements for a possession offense. We agree. The trial court's ruling is supported by a literal reading of the statute, which provides that the offense is enhanced if "[t]he offender was in possession of controlled substances in an amount greater than" the amount specified for each controlled substance. The controlled substance charged as a CDO need not be the same substance possessed in the enhancement amount. As we held in *State v. Moore*, 172 Or App 371, 382, 19 P3d 911, *rev den*, 332 Or 250 (2001), the factors listed in ORS 475.900 need not relate to the specific underlying drug offense.[6] The state need only prove that the three factors occurred in conjunction with and thus accompanied the drug offenses for which the defendant was convicted. There is no requirement of a nexus between the underlying drug offense and the listed factors. Thus, the trial court did not err in denying defendant's motion to strike the elevation of the charges of possession of marijuana and MDMA to commercial drug offenses.

Defendant's remaining assignments relate to merger of guilty verdicts and sentencing. In his fifth assignment of error, defendant contends that the trial court committed plain error by not merging the guilty verdict on Count 54 (possession of methamphetamine as a CDO), with the guilty verdict on Count 55 (possession of marijuana as a CDO), because both counts alleged the same facts— (1) methamphetamine possession in an amount greater than eight grams, (2) possession of stolen property, and (3) possession of materials used for packaging controlled substances. The only difference, defendant argues, is that Count 55 has the additional allegation of possession of marijuana. Although he did not make the contention below, defendant now asserts that, as pleaded, the offense of possession of methamphetamine charged as a CDO is actually a lesser included of the offense of possession of marijuana charged as a CDO, and that the two guilty verdicts should merge. Defendant asks that we consider and correct the error as plain error.

---

[6] In *Moore*, we addressed the issue in the context of a statutory predecessor to ORS 475.900.

Error is plain if it is (1) an error of law; (2) that appears on the face of the record; and (3) that is obvious and not reasonably in dispute. *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006). In defendant's view, it is obvious and not reasonably in dispute that as charged, possession of methamphetamine is a lesser-included offense of possession of marijuana and that the guilty verdicts should therefore merge.

In determining whether convictions merge under ORS 161.067(1),[7] the court considers the statutory elements of each offense, not the underlying factual circumstances recited in the indictment. *State v. Gray*, 240 Or App 599, 604-07, 249 P3d 544, *rev den*, 350 Or 574, (2011); *State v. Wright*, 150 Or App 159, 162, 945 P2d 1083 (1997). Offense subcategories, including the CDO categories, are not statutory elements of the offense. *See State v. Merrill*, 135 Or App 408, 412, 899 P2d 712 (1995), *rev dismissed*, 323 Or 73 (1996). Counts 54 and 55 allege distinct offenses, with distinct elements—one charged possession of methamphetamine, ORS 475.894, and the other charged possession of marijuana, ORS 475.864. Although the alleged CDO enhancement factors for each were the same, it is not obvious to us or reasonably beyond dispute that the pleading of the enhancement factors made the methamphetamine charge a lesser included of the marijuana charge and that the two guilty verdicts should therefore merge. We accordingly reject defendant's invitation to consider the issue as plain error.

We have previously rejected the argument that defendant makes in his sixth assignment of error, that the trial court erred in rejecting his motion to withdraw from the jury's consideration at sentencing the "harm greater than typical" enhancement factor, because it was not alleged in the indictment. As we held in *State v. Sanchez*, 238 Or App 259, 267, 242 P3d 692 (2010), *rev den*, 349 Or App 654 (2011), sentencing enhancement factors do not need to be set forth in the indictment.

---

[7] ORS 161.067(1) provides:

"When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are statutory violations."

In his seventh assignment, defendant asks that we review as plain error his unpreserved contention that the trial court erred in instructing the jury with regard to offender-specific enhancement facts at sentencing. Defendant's unpreserved contention is not subject to plain error review. *See State v. Guardipee*, 239 Or App 44, 46-47, 243 P3d 149 (2010) (construing ORCP 59 H(1) to bar plain error review of a claim that the trial court erred in giving or refusing to give an instruction unless the party identified the asserted error to the trial court and made a notation of exception immediately after the court instructed the jury).

OAR 213-008-0002(1)(b)(D) provides that a defendant is subject to a departure sentence if the evidence establishes the defendant's "persistent involvement" in similar offenses. That factor may be cited when consecutive sentences are imposed "only if the persistent involvement in similar offenses * * * is unrelated to the current offense." In his eighth assignment of error, defendant asks that we review as plain error the trial court's failure to instruct the jury that, in considering the sentence enhancement factor of "persistent involvement," the jury should limit itself to consideration of defendant's prior convictions for misdemeanor theft and misdemeanor criminal mischief for which he had been sentenced before the trial in this proceeding had begun, and could not consider uncharged misconduct and offenses of which the jury had just found him guilty. Defendant did not ask for the instruction that he now proposes, and we therefore consider whether it is subject to plain error review. *See State v. Toth*, 213 Or App 505, 162 P3d 317 (2007), (explaining limited exceptions to rule precluding plain error review).

It is not obvious or reasonably beyond dispute that defendant's proposed instruction would have been a correct statement of the law. In determining persistent involvement, a jury may consider a defendant's prior criminal conduct, even if that conduct did not result in a criminal conviction. *State v. Barrett*, 134 Or App 162, 165, 894 P2d 1183, *rev den*, 321 Or 340 (1995) (defendant's admitted history of sexually abusing young women could be considered "persistent involvement" even in the absence of criminal convictions).

Additionally, the jury could find "persistent involvement" based entirely on crimes that the jury itself had found defendant guilty of committing, as long as the offenses were unrelated to each other. *State v. Nelson*, 119 Or App 84, 87-88, 849 P2d 1147 (1993); *see also State v. Ceballos*, 162 Or App 477, 481, 986 P2d 680 (1999), *rev den*, 330 Or 252 (2000) (in determining whether the persistent involvement factor applies, "the sentence court may consider similar offenses committed after the current offense for which sentence is being imposed"). The state charged "persistent involvement" for only eight of the 42 counts of theft with which defendant was charged. The jury found that defendant had committed all 42 theft counts, which involved 37 different victims. The jury could properly consider all of the offenses of which defendant had been found guilty as evidence of persistent involvement, not only those offenses for which he had been previously convicted, and could infer that defendant's thefts were unrelated and therefore that he was persistently involved in property crime. It was not plain error for the court to fail to instruct the jury as defendant now proposes.

In his ninth assignment, defendant contends that the trial court committed plain error in not declaring a mistrial *sua sponte* when the prosecutor argued to the jury that it could find "persistent involvement" based on evidence that was not in the record.[8] As we have said, it was not plain error for the jury to consider as evidence of

---

[8] In his argument on rebuttal regarding persistent involvement, the prosecutor argued:

"Now, you all saw the pictures and you heard all the testimony, and I—*you can tell from the testimony and the pictures that there were other items of stolen property and other victims that weren't mentioned in the trial, that we didn't bring to court.*

"Furthermore, you heard from Sergeant Albert about some numbers that the Salem PAID had compiled about how many items they had recovered and how many they had returned; and you may not remember the number, but after you add them up, Salem PAID returned approximately 677 items. And you might remember from Ms. Suver's exhibit in closing, they returned about 302 items so that's roughly half * * * the items they returned you heard about. So there was nearly twice that many in the total. And I would submit to you that those other items are clear indicators that the defendant was persistently involved in other similar activity—not related to the charges that you've already heard about."

(Emphasis added.)

persistent involvement the offenses with which defendant was charged in this proceeding. Further, as we have said, the jury could also consider evidence of previous conduct with which defendant was not charged and for which he was not convicted. The record was replete with evidence from which the jury could properly find that defendant was persistently involved in theft crimes and, because it was in the record, it was proper for the prosecutor to refer to that evidence in his argument to the jury at sentencing. It was not, however, proper for the prosecutor to argue that the jury could consider conduct that was not supported by evidence in the record, and, to the extent that the prosecutor's comment suggested that, the comment was not permissible. The question is whether it was plain error for the trial court not to grant a mistrial *sua sponte*.

It is a rare circumstance where the trial court must grant a mistrial in the absence of an objection by the defendant during the prosecutor's rebuttal argument to the jury. A trial court's denial of a motion for mistrial based on a prosecutor's improper argument to the jury is reviewed for an abuse of discretion, and a trial court abuses its discretion in denying a motion for mistrial when the prosecutor's comments are so prejudicial as to deny the defendant a fair trial. *State v. Cheney*, 171 Or App 401, 410, 16 P3d 1164, *rev den*, 330 Or 252 (2000). We decline to conclude, on this record, that the prosecutor's remark, although improper, was so prejudicial that the only legally acceptable alternative was to grant a mistrial *sua sponte*, and that trial court therefore committed plain error in not granting a mistrial *sua sponte*.

We reject without further discussion defendant's tenth and eleventh assignments, in which he contends that the evidence was insufficient to support a finding of "persistent involvement," and that an upward departure sentence was not supported by substantial and compelling reasons.

Eight of defendant's convictions involved two thefts against each of four victims. In his twelfth through fifteenth assignments of error, defendant contends that the trial court erred in failing to merge the eight guilty verdicts into four

convictions. The state concedes that defendant is entitled to a merger of guilty verdicts for thefts committed against the same person and that the trial court should have entered single convictions for counts of theft from the same victim, reducing by four defendant's total convictions. We accept the state's concession.

Remanded for resentencing and for entry of judgment merging Counts 18 and 19 into a single conviction of theft; merging Counts 20 and 21 into a single conviction of theft; merging Counts 33 and 34 into a single conviction of theft; merging Counts 38 and 39 into a single conviction of theft; otherwise affirmed.

# APPENDIX 1