Argued and submitted December 17, 2015, affirmed May 3, petition for review denied September 14, 2017 (361 Or 886)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRYON MATTHEW WILSON,
*Defendant-Appellant.*

Douglas County Circuit Court
11CR0694FE; A155559

395 P3d 924

Brian Michaels argued the cause and filed the briefs for appellant.

Jonathan N. Schildt, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General, and Shannon T. Reel, Assistant Attorney General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## GARRETT, J.

Defendant appeals a judgment of conviction for one count of unlawful delivery of marijuana, ORS 475.860(2)(b) (2011). Defendant assigns error to the trial court's denial of his motion to suppress evidence discovered after police entered private property in order to contact defendant at his residence. Defendant argues that the trial court erred in concluding that police did not unlawfully trespass on defendant's property; defendant contends that "No Trespassing" and "Private Drive" signs posted on a privately owned road leading to his residence objectively manifested an intention to prohibit casual visitors from approaching. Finding no error by the trial court, we affirm. We reject defendant's remaining assignments of error without written discussion.

We review the trial court's denial of a motion to suppress for legal error. *State v. Davis*, 282 Or App 660, 666, 385 P3d 1253 (2016). We are bound by the trial court's findings of historical fact if supported by constitutionally sufficient evidence in the record. *State v. Ehly*, 317 Or 66, 75-76, 854 P2d 421 (1993). If the trial court did not make express factual findings on any pertinent issue, we presume that the trial court decided disputed facts in a manner consistent with its ultimate conclusion. *Id.* at 75. We state the facts in accordance with that standard.

In March 2011, Deputies Tilley and Norton visited defendant's home in response to an anonymous 9-1-1 call reporting gunshots in the area. Defendant resided on Lowe Road, a private road owned by defendant's landlord, Ottenbreit. As Tilley traveled to defendant's residence, he observed a green street sign lying on the ground where Lowe Road intersects the public road. In addition to Ottenbreit's residence and defendant's residence, at least one other home was accessible via Lowe Road. Defendant lived between one-half and three-quarters of a mile up Lowe Road.

Neither Tilley nor Norton saw any "No Trespassing" or "Private Drive" signs along Lowe Road before turning into defendant's driveway. Upon arriving, the officers spoke with defendant, obtained consent to search his home, and discovered evidence of the crime of conviction.

Before trial, defendant moved to suppress all of the evidence obtained as a result of the officers' entry onto defendant's property. Defendant argued, among other things, that the officers had unlawfully entered defendant's property because "No Trespassing" and "Private Drive" signs are posted on Lowe Road, the officers disregarded those signs, and no exigency otherwise justified the officers' entry onto the road.

At a hearing on the motion to suppress, defendant offered videos showing the route to his home.[1] As depicted in the videos, there are no gates, fences, or upright signs at the intersection of Lowe Road and the public road. Some distance down Lowe Road, there are two signs hanging on a post adjacent to the road: a small "Private Drive" sign and a larger "No Trespassing" sign. Further down the road, another "No Trespassing" sign hangs on a fence set off from and parallel to the road. The road proceeds through a wooded area, past several driveways, before reaching defendant's driveway and residence. There are no signs posted adjacent to defendant's driveway. A witness testified that the signs on Lowe Road are "clear and easy to see" and that the road had "always looked" the way that it did on the videos from the time she had first visited defendant's home in 2009.

Ottenbreit testified that he owns and maintains most of Lowe Road. He testified that he had posted "No Trespassing" signs on Lowe Road continuously since 1993, replacing the signs as needed, and that the signs had been present at the time the officers approached defendant's home. Ottenbreit further testified that, in addition to the residents of the homes along Lowe Road, the road was regularly accessed by delivery drivers and by a utility company with an easement on Ottenbreit's property.

Tilley testified that it was evening, but not dark, when he drove to defendant's home and that he did not see any signs posted along Lowe Road. He testified that, based on the fallen city street sign and the fact that "the roadway

---

[1] The videos were created approximately five months after the events at issue.

was open" and "maintained," it did not occur to him that the road was private.

The trial court denied defendant's motion to suppress. In a memorandum opinion, the court reasoned that the officers did not trespass because the signs posted on Lowe Road, as depicted in the videos, were not on defendant's property. The trial court also expressly credited the officers' testimony that they did not see the signs.

On appeal, defendant renews his argument that the officers unlawfully trespassed in order to reach his residence. Defendant argues that the presence of the "No Trespassing" and "Private Drive" signs along Lowe Road was sufficient to manifest an intention to prohibit the public from approaching defendant's residence, whether or not the officers actually saw the signs. In response, the state argues that, even if the officers saw the signs, a reasonable person would not have understood those signs to prohibit the use of the road to contact defendant at his residence.

Article I, section 9, of the Oregon Constitution provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." In order to determine whether the government violated Article I, section 9, we must first decide the threshold question of whether the officers conducted a "search" within the meaning of Article I, section 9. *State v. Meredith*, 337 Or 299, 303, 96 P3d 342 (2004). "Under Article I, section 9, a search occurs when the government invades a protected privacy interest." *Id.* If the government did not invade a protected privacy interest, the protections of Article I, section 9, do not apply, and our inquiry ends. *Id.*

Thus, we must decide whether the trial court erred in concluding that the officers did not invade defendant's protected privacy interest by approaching his residence. In order to preserve a protected privacy interest in the areas used by the officers to access his residence, defendant was required to objectively manifest an intention to prohibit members of the public from entering those areas without permission. *See State v. Dixson/Digby*, 307 Or 195, 211-12, 766 P2d 1015 (1988) ("A person who wishes to preserve a constitutionally

protected privacy interest in land outside the curtilage must manifest an intention to exclude the public by erecting barriers to entry, such as fences, or by posting signs."); *State v. McKee*, 272 Or App 372, 380, 356 P3d 651 (2015) (describing the relevant inquiry as whether "an objectively reasonable member of the public would have believed that he or she could enter the private * * * property without permission"). Whether barriers to entry are sufficient as a matter of law to give a reasonable person notice that entering the property is prohibited depends upon the totality of circumstances, including "the nature of the property and the characteristics and locations of the signs and fencing." *McKee*, 272 Or App at 379; *State v. Hockema*, 264 Or App 625, 633, 333 P3d 1134, *rev den*, 356 Or 517 (2014) ("[A]n individual's manifest intention to exclude the public depends on the factual circumstances in each case." (Internal quotation marks omitted.)); *see State v. McIntyre/Pereira*, 123 Or App 436, 441, 860 P2d 299 (1993), *rev den*, 318 Or 351 (1994) (concluding that the trial court was required to make factual findings in order to resolve the legal question of whether the state met its burden to show that police officers had lawfully entered private property). Further, in the absence of signs or other barriers to entry manifesting an intention to exclude casual visitors, we assume that an occupant impliedly consents to members of the public approaching the front door of a residence in order to contact its occupants. *State v. Roper*, 254 Or App 197, 200, 294 P3d 517 (2012), *rev den*, 353 Or 714 (2013).

We agree with the trial court that, under the totality of circumstances, the intention to exclude the public from using Lowe Road to access defendant's residence was not objectively manifest. Here, the characteristics and placement of the signs were insufficient to put members of the public on notice that they were prohibited from travelling on that road to approach the residences along it. First, the presence of the two "No Trespassing" signs was not sufficient to prohibit public access to the road because a reasonable member of the public could have readily assumed that those signs were "intended only to exclude those who might put the property to their own uses," but not "to visitors who desired to contact the residents." *State v. Pierce*, 226 Or App 336,

354, 203 P3d 343 (2009) (internal quotation marks omitted). Second, a reasonable member of the public could understand the "Private Drive" sign to mean that Lowe Road was privately owned but that it was nevertheless acceptable for a casual visitor to use the road to approach any of the residences accessible by that road. *See State v. Cam*, 255 Or App 1, 6, 296 P3d 578, *adh'd to as modified on recons*, 256 Or App 146, 300 P3d 208, *rev den*, 354 Or 148 (2013) (concluding that a sign indicating that property is private "does not in and of itself suggest that visitors to the property are excluded"). Thus, when viewed together, the "Private Drive" and "No Trespassing" signs did not objectively manifest an intention to prohibit public access to Lowe Road, particularly in the absence of other barriers to entry, such as fences, gates, or signs clearly articulating an intention to exclude even casual visitors. *Cf. State ex rel Juv. Dept. v. Reeves*, 163 Or App 497, 503-04, 988 P2d 433 (1999) (reasoning that a reasonable member of the public would understand a sign reading "PRIVATE ROAD NO UNAUTHORIZED PERSONS BEYOND THIS POINT" to prohibit entry in the absence of prior authorization). Furthermore, because there were no signs or other barriers marking defendant's driveway at its intersection with Lowe Road, a reasonable person would not conclude that casual visitors were prohibited from approaching defendant's front door. *Cf. Roper*, 254 Or App at 199, 201 (concluding that occupant had manifested an intention to prohibit the public from approaching a residence in part because the occupant had posted a "No Trespassing" sign "immediately adjacent" to the driveway). Accordingly, regardless of whether the officers saw the posted signs, those signs were inadequate to convey that all casual visitors were prohibited. Thus, sufficient evidence supported the trial court's conclusion that, by driving to and approaching defendant's residence, the officers did not conduct a "search" within the meaning of Article I, section 9.

For the foregoing reasons, we conclude that the trial court did not err in denying defendant's motion to suppress. We reject defendant's remaining assignments of error without written discussion.

Affirmed.