Argued and submitted July 9, reversed and remanded December 2, 2020, petition for review denied March 4, 2021 (367 Or 668)

# STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

# TIMOTHY LEWIS FAUGHT,
*Defendant-Respondent.*

## Lane County Circuit Court
## 19CR04247; A171391

477 P3d 1226

In this criminal case, the state appeals from an order granting defendant's motion to suppress evidence. The state argues that the trial court erred in concluding that the deputies violated defendant's privacy interest when they approached defendant's home despite the "Beware of the Dog" sign in front of defendant's residence, the closed gate secured by a rebar pole, and the "No Trespassing" sign in front of an abandoned residence also on defendant's property. According to the state, the placement of the signs and the existence of the rebar pole were inadequate to put casual visitors on notice that they were excluded from the property. *Held*: Under the totality of the circumstances, the characteristics of defendant's property did not put a reasonable person on notice that entry through the gate to approach the front door of defendant's residence was prohibited. First, the "Beware of the Dog" sign could be interpreted as informing visitors to be on the lookout for a dog if they opened the gate, rather than informing visitors that an intrusion beyond the gate is forbidden. Second, although the rebar secured the gate closed, there is no evidence that the rebar acted as a lock or otherwise signified an intent to exclude visitors. Finally, the "No Trespassing" sign in front of the abandoned house could lead a casual visitor approaching defendant's residence to believe that the sign was intended to exclude only those who might approach the abandoned house and not defendant's residence.

Reversed and remanded.

Lauren S. Holland, Judge.

Kirsten M. Naito, Assistant Attorney General, argued the cause for appellant. Also on the brief was Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

David A. Hill argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Kistler, Senior Judge.

POWERS, J.

Reversed and remanded.

**POWERS, J.**

In this criminal case, the state appeals from an order granting defendant's motion to suppress evidence seized from defendant's residence. The state argues that, because defendant failed to manifest an intent to exclude casual visitors from his residence, the trial court erred in concluding that the deputies violated his privacy interest by entering his property. We reverse and remand.

We review the trial court's ruling for errors of law and are bound by the trial court's findings of fact if there is constitutionally sufficient evidence in the record to support those findings. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

The facts are undisputed. Deputy Wallace responded to a report of a domestic dispute between defendant and the mother of his three children. As he was responding to defendant's rural Lane County residence, Wallace learned that there had been a dispute over a shotgun and that the children were in the residence. Wallace and other deputies met with the mother down the road from defendant's property to gather more specific information about the dispute and the firearm in the home. Wallace also learned from dispatch that defendant was a felon, which raised additional concern that defendant could be unlawfully possessing a firearm.

After meeting with the mother, Wallace and the other deputies then approached defendant's home. At the suppression hearing, Wallace explained that it was a single-level house with a "wire animal[-]type fence" with galvanized gates leading to a driveway. There was a "Beware of the Dog" sign posted next to the gates, which were closed.[1]

---

[1] Although the text of the signs in this case appears in all capital letters, we do not replicate that appearance for readability purposes.



Exhibit 201

To enter the property, Wallace had to lift a rebar rod that ran through the fence down to the ground. As Wallace and the other deputies walked through the gate and up the driveway toward defendant's home, defendant came out of the house onto the porch.

     Wallace also saw another gate on the property. The entire property was fenced and there was a second gate that

was "quite a ways away" from the set of gates that were in front of defendant's house. The second gate was near an abandoned residence on the property. Wallace recalled seeing a "No Trespassing" sign by the abandoned residence, which was "quite a distance from the gate" that the deputies went through. At the suppression hearing, Wallace testified that he believed the no trespassing sign was "meant for the abandoned residence."



Exhibit 206



Exhibit 207

After passing through the gate in front of defendant's house and having a short conversation with defendant, the deputies asked if they could enter the house to check on the children, and defendant agreed. Eventually, deputies

found the shotgun, which led to defendant being charged with felon in possession of a firearm, ORS 166.270(1).

Before trial, defendant moved to suppress all evidence obtained or derived during and subsequent to the deputies entering the curtilage of his property, asserting, among other arguments, that the deputies had unlawfully entered his property when they passed through the gate marked with the "Beware of the Dog" sign.[2] Defendant maintained that he manifested an intent to exclude casual visitors from entering the curtilage of his residence by placing a fence around the property, keeping the two gates closed, and posting both a "No Trespassing" and a "Beware of the Dog" sign. The state argued that, although the gate used by the deputies was closed, defendant's "placement of the signs was inadequate to put a casual visitor on notice that they were excluded from approaching the front door" of defendant's residence. In particular, the state emphasized that the "No Trespassing" sign was "at the far end of the property, away from the ostensible entrance onto the property." Further, the state contended that the "Beware of the Dog" sign could have been understood to "serve as a warning to visitors that there was a dog" and to enter cautiously, rather than as a clear intention to exclude casual visitors.

The trial court granted defendant's motion:

"So the initial question that the Court is required to answer is whether or not the officers invaded the defendant's protected privacy interest by approaching the residence.

"And what the Court finds here under the circumstances of this particular case is that there were—the property was surrounded in total by fencing with closed gates; that the defendant took steps by use of two signs on the only two gates that had access to this property, gates that were closed, to inform casual visitors or the—and the public that this was private property and not to be entered

---

[2] Defendant's suppression motion advanced two additional reasons, which the trial court did not address. Because the trial court granted the motion on the basis that the deputies' entry onto defendant's property was unlawful, the court did not reach defendant's additional arguments. We, likewise, do not address defendant's additional suppression arguments and remand to the trial court to consider those arguments in the first instance.

without permission. The gate had to be lifted, in fact, and moved physically and manually in order to enter into the protected area of the residence of the defendant.

"* * * * *

"As such, under the circumstances in this case the Court finds that there was a Trespass and that all actions thereafter were as a result of the unlawful entry into the premises."

On appeal, the state renews its argument that, under the totality of the circumstances, the characteristics of defendant's property do "not support the conclusion that defendant manifested an intent to prohibit casual visitors to his residence." Specifically, the state points out that defendant's property contains two houses, which appears—in the state's estimation—to a casual visitor to be two separate residences: each house has slightly different landscaping; each house has its own mailbox; and, each house has its own gate. Although the state acknowledges that the closed gate with the "No Trespassing" sign at one end of defendant's property was sufficient to manifest an intent to keep visitors from approaching the abandoned house, the state asserts that that intention did not extend to the gate—with the "Beware of the Dog" sign—in front of defendant's residence. That gate, the state reasserts, could be interpreted by a casual visitor to mean "entry was permitted, but to be careful of the dog."

In response, defendant remonstrates that the trial court correctly concluded that, "by completely fencing the real property around his residence, keeping the only two gates allowing entry into the curtilage of his property closed, and posting signs by the closed gates that read 'No Trespassing' and 'Beware of [the] Dog,'" he adequately manifested an intent to exclude casual visitors from entering the curtilage of his property.

Article I, section 9, of the Oregon Constitution provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]" Article I, section 9, protects an individual's privacy interest in the land outside the curtilage of a person's dwelling, "if the

person manifests an intent to exclude the public by erecting barriers, such as fences or signs." *State v. Gabbard*, 129 Or App 122, 126, 877 P2d 1217, *rev den*, 320 Or 131 (1994). "[I]n the absence of signs or other barriers to entry manifesting an intention to exclude casual visitors, we assume that an occupant impliedly consents to members of the public approaching the front door of a residence in order to contact its occupants." *State v. Wilson*, 285 Or App 296, 300, 395 P3d 924, *rev den*, 361 Or 886 (2017). The presumption of implied consent arises from social norms and common practices:

> "Drivers who run out of gas, Girl Scouts selling cookies, and political candidates all go to front doors of residences on a more or less regular basis. Doing so is so common in this society that, unless there are posted warnings, a fence, a moat filled with crocodiles, or other evidence of a desire to exclude casual visitors, the person living in the house has impliedly consented to the intrusion. Going to the back of the house is a different matter. Such an action is both less common and less acceptable in our society. There is no implied consent for a stranger to do so."

*State v. Ohling*, 70 Or App 249, 253, 688 P2d 1384, *rev den*, 298 Or 334 (1984) (citation omitted).

To determine whether an individual has taken sufficient steps to exclude casual visitors, "[w]e consider all surrounding circumstances." *State v. Roper*, 254 Or App 197, 200, 294 P3d 517 (2012), *rev den*, 353 Or 714 (2013). Specifically, "[w]hether such steps are sufficient to give a reasonable person notice that entry onto the property is prohibited depends upon, among other things, the nature of the property and the characteristics and locations of the signs and fencing." *State v. McKee*, 272 Or App 372, 379, 356 P3d 651 (2015).

For example, in *State v. Cam*, 255 Or App 1, 6, 296 P3d 578, *adh'd to as modified on recons*, 256 Or App 146, 300 P3d 208, *rev den*, 354 Or 148 (2013), we determined that the combination of an open gate leading to a driveway and "PRIVATE PROPERTY" signs, as presented in that case, did not sufficiently manifest an intent to exclude casual visitors from the defendant's property. In so concluding, we explained that the posting of a sign representing that it is

private property "does not in and of itself suggest that visitors to the property are excluded." *Id.* Rather, we explained, to exclude the casual visitor from approaching the residence, "a person must make a greater showing than that which would be required to exclude individuals who would use the property for their own purpose, such as hiking." *Id.* (quoting *Gabbard*, 129 Or App at 127).

In this case, the characteristics of defendant's property do not put a reasonable person on notice that entry onto the property through the gate to approach the front door of his residence was prohibited. First, the "Beware of the Dog" sign combined with a closed gate did not put casual visitors on notice that they were excluded from approaching the residence. To be sure, the sign informed visitors to be on the lookout for a dog if they opened the gate to approach the front door. But there is a qualitative difference between informing visitors that there is a dog on the property that warrants being cautious and telling casual visitors that any intrusion beyond the gate is forbidden.

Second, the rebar pole securing the gate adds little to the analysis. Although the rebar secured the gate closed, there is no evidence that the rebar acted as a lock or otherwise signified an intent to exclude casual visitors from approaching the residence. *See State v. McIntyre*, 123 Or App 436, 438-441, 860 P2d 299 (1993), *rev den*, 318 Or 351 (1994) (concluding that a six- to seven-foot tall wooden fence with a metal gate across the driveway was not, standing alone, sufficient to manifest an intent to exclude visitors from going to the front door). Like a latch on a gate that can be opened by the proverbial child going door to door raising money for a youth soccer team or a political candidate canvassing, the rebar does little to rebut the presumption of implied consent arising from social norms and customs. *See, e.g., id.* at 440-41 (explaining that there are a variety of reasons why individuals may have a gate with a fence including to deny all access to the public without consent "by always keeping the gate locked or by posting signs indicating that intent, such as 'No Trespassing,'" or simply "to keep children or pets off their premises" while nonetheless allowing casual visitors to pass through the gate and approach the front door).

Third, to the extent that defendant's argument and the trial court's ruling rely on the "No Trespassing" sign, which was in front of the abandoned residence, the placement of that sign does not aid defendant in manifesting an intent to exclude the public from using the gate with the "Beware of the Dog" sign to approach his main residence. *See Gabbard*, 129 Or App at 128 (concluding that the "No Trespassing" sign on a fence adjacent to the defendant's driveway "was inadequate to exclude visitors who would use the driveway to make contact with the occupants of the house"). The no-trespassing sign was not near the gate used to access defendant's residence. Indeed, although there was one fence surrounding the entire property, the distance between the gates and other circumstances suggest to an objective visitor that both gates and signs operated independently of each other. That is, given the distance between the two signs, along with each sign being in front of two distinct residences each with their own respective mailbox, it is reasonable for a casual visitor approaching defendant's residence to believe that the "No Trespassing" sign was intended to exclude only those who might approach the abandoned house.

Considering the totality of the circumstances, we conclude that defendant had not manifested an intent to exclude the public from opening the gate with the "Beware of the Dog" sign to walk up to defendant's residence. Accordingly, because the trial court erred in granting defendant's motion to suppress on that basis, we reverse the trial court's order and remand for consideration of the other bases raised in defendant's suppression motion.

Reversed and remanded.