Argued and submitted June 19, affirmed July 23, 1997

## STATE OF OREGON,
*Appellant,*

*v.*

## DONALD CHRISTOPHER POULOS,
*Respondent.*

(96CR0512FE; CA A94394)

942 P2d 901

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore

R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Robert J. McCrea argued the cause for respondent. With him on the brief was McCrea, P.C.

Before Deits, Chief Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendant was indicted for unlawful manufacture, delivery and possession of marijuana in violation of ORS 475.992. The state appeals the pretrial suppression of evidence on defendant's motion. We affirm.

The testimony and evidence at the hearing on defendant's motion showed that, on February 16, 1996, acting on an anonymous tip, Detectives Bennett and Stephens went to defendant's property on Territorial Highway, halfway between Lorane and Curtin in rural Douglas County. The highway winds through a remote and heavily wooded area, and defendant's residence is about a quarter of a mile from the highway, up a steep, narrow, single vehicle driveway. Defendant's mail and newspaper boxes were at the entrance to the driveway. At the right side of the driveway, a sign reading "No Hunting or Trespassing Under Penalty of Law" was posted on a tree facing the highway. On the left side of the driveway entrance, another sign reading "Posted—No Hunting" was attached to a post. The sign on the left was sprayed with red paint, and a cable was attached to the post and circled around it. Directly across the driveway was a second post and, further to the right, a large tree to which the cable could be attached. The cable was not pulled across the driveway. The large tree and post on the right side had been knocked over in a storm a week or two before the officers' visit.

About 20 feet up the driveway, hanging at an angle, was a black and orange "KEEP OUT" sign posted on a sawed-off tree. The sign faced the driveway. Half way up the driveway was a red and white sign reading "Guard Dog on Duty" with a picture of a dog. About 100 feet beyond was a large red "STOP" sign on the left-hand side of the driveway. Bennett testified that at the stop sign there was a "partially graveled roadway that goes to the right, looked like somebody was cutting wood off of." Bennett testified that he saw the "No Hunting or Trespassing Under Penalty of Law" sign at the entrance to the driveway, the "Guard Dog on Duty" sign and the "Stop" sign. Stephens testified that he saw the "No Hunting or Trespassing Under Penalty of Law" sign and the "Guard Dog" sign.

The officers proceeded up the driveway, noticing items that they recognized as associated with marijuana growing. In the second-story window of defendant's residence, they saw a marijuana plant. After defendant refused to permit the officers to search his residence, they applied for a warrant and searched the property.

Holding that defendant had excluded the public from his property under *State v. Dixson/Digby*, 307 Or 195, 766 P2d 1015 (1988), the trial court granted defendant's motion to suppress:

> "[T]he 'Keep Out' sign that is hanging from the log is angled such that as you drive in the driveway you won't see that. Obviously, as you turn the corner you could easily see it and whether or not the driver turns his head as he's watching the road, that's a factual question, but eliminating that particular sign, we have the sign on the right-hand side that says * * * 'No Hunting or Trespassing Under the Penalty of Law.' And that's the sign they all saw and 'Trespassing' is in big letters. 'Under the Penalty of Law' is much smaller print. And then, of course, not seeing the 'Posted No Hunting' sign because it is * * * on a short post and one doesn't necessarily think objectively that that means no trespassing, it just means no hunting, but going on and then seeing the 'Guard Dog' sign and the 'Stop' sign in a place that obviously doesn't look like a clear intersection, there might be a little bit of gravel going off to the side * * * but it doesn't look like the kind of intersection that you would necessarily look for cross traffic. It is clear to me that what they're saying is you better watch out, you better not be proceeding forward. * * * I agree that a fence itself may not be a determining factor but the totality of these circumstances leads me to the conclusion that objectively I would not trespass on those premises."

■ Article I, section 9, protects a privacy interest in land outside the curtilage of a dwelling if the person manifests an intent to exclude the public by erecting barriers, such as fences or signs. *State v. Gabbard*, 129 Or App 122, 126, 877 P2d 1217, *rev den* 320 Or 131 (1994). In *Dixson/Digby*, 307 Or at 211-12, the Supreme Court said:

> "An individual's privacy interest in land he or she has left unimproved and unbounded is not sufficient to trigger the protections of Article I, section 9. Thus, it is not sufficient

that the property in question is privately owned, or that it is shielded from view by vegetation or topographical barriers, because those features do not necessarily indicate the owner's intention that the property be kept private. A person who wishes to preserve a constitutionally protected privacy interest in land outside the curtilage must manifest an intention to exclude the public by erecting barriers to entry, such as fences, or by posting signs."

■ The state argues that the court erred in suppressing the evidence. The state contends that the law "plainly assumes" that a rural or urban homeowner "implicitly" invites the public to approach the dwelling by the ordinary route in the absence of some barrier or notification that clearly and unambiguously prohibits such contact. *See State v. Ohling,* 70 Or App 249, 253, 688 P2d 1384, *rev den* 298 Or 334 (1984). The state contends that here defendant did not take sufficient steps to manifest that prohibition. The state frames the issue and its answer as whether

"a 'No Hunting-No Trespassing' sign at the foot of a rural driveway, and 'Guard Dog' and 'Stop' signs farther along the driveway, constitute adequate measures to exclude the public from driving up to defendant's house, in the absence of any other exclusionary measures such as a gate, cable across the road, etc.? They do not."

The state contends that the "No Trespassing" sign is "at best" ambiguous because, when coupled with the "No Hunting" portion of the sign, it is possible for a person to conclude that only hunters are trespassers. The state also argues that an "adjuration" not to trespass means "do not go wandering over my property without permission," but does not mean "stay off this driveway and do not approach my house." The state contends that the "Guard Dog" sign merely informs visitors of the presence of a dog. It also argues that the evidence does not support the trial court's interpretation that the meaning of the "Stop" sign was to exclude visitors. The state contends that the evidence shows that the sign, which was an old road sign, was at an intersection and that it "is entirely reasonable to assume that the sign is there to warn drivers of a possible hazard from other vehicles, and nothing more."

On a motion to suppress, we are bound by the trial court's findings if there is evidence to support them. We review the court's legal conclusions for error of law. ORS 138.220; *State v. Stevens*, 311 Or 119, 126-27, 806 P2d 92 (1991). Here, the photographs in evidence support the court's finding that opposite the "Stop" sign there was "a little bit of gravel going off to the side there" but that the gravel did not constitute an intersecting road. That the gravel was not an intersection is further supported by Bennett's testimony that the graveled area appeared to have been used for wood cutting. Additionally, as defendant points out, the stop sign is actually set beyond the gravel, on the left-hand side of the driveway. In other words, the evidence does not dictate, as the state contends, that the only finding that can be made is that the purpose of the sign was to tell drivers to stop to watch for vehicles coming from the right.

Additionally, although the state's interpretations of the "No Trespassing" and "Guard Dog" signs may be plausible, they are alternative interpretations to those made by the trial court; they are not the only ones that the evidence will support. Furthermore, the state's interpretations do not address the cumulative effect of the signs. The trial court, however, did consider the "totality of the circumstances"[1] and concluded that it was clear that defendant intended to exclude the public from his property.

We agree with the trial court. Defendant's property is in a remote location, and his mailbox and newspaper box are on the highway at the base of his driveway. Before entering the driveway, a visitor was told not to trespass; that admonition was followed by a warning sign for a guard dog; that warning, in turn, was followed by the command to "Stop."[2] There was no evidence that even the customary

---

[1] Because we agree with the trial court that, even not considering the "Keep Out" sign, the evidence showed defendant's intent to exclude the public, we do not decide what effect, if any, an officer's failure to see posted signs might have on determination of that intent. *But see State v. Dixson/Digby*, 307 Or 195, 211, 766 P2d 1015 (1988) ("Allowing the police to intrude into private land, regardless of the steps taken by its occupant to keep it private, would be a significant limitation on the occupant's freedom from governmental scrutiny.").

[2] Additionally here, the officers knew that, by agreement with the electric company, defendant read his own meter and reported it to the company.

casual visitor would be welcome on defendant's property.[3] A gate or barrier was not required to indicate further that defendant wished to have his privacy respected. *See Dixson / Digby*, 307 Or at 211 ("In this society, signs, such as 'No Trespassing' signs, the erection of high, sturdy fences and other, similar measures *are all indications* that the possessor wishes to have his privacy respected." (Emphasis supplied.)). The trial court did not err in suppressing the evidence.

Affirmed.

---

[3] We do not agree with the state that the trial judge impermissibly decided the case using "an unduly subjective test," by deciding whether she would feel comfortable driving up the driveway instead of whether a hypothetical reasonable member of the public would. The judge was familiar with the area and made some personal comments, but those comments have not entered into our review. It is clear from the court's findings that the court concluded that, objectively, the evidence of defendant's intention met the standard articulated in *Dixson / Digby*.