Submitted July 29, judgment as to Counts 1 and 2 reversed and remanded; remanded for resentencing; otherwise affirmed November 20, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOHN ALLEN McCLATCHEY, JR.,
*Defendant-Appellant.*

Lane County Circuit Court
201108543; A149816

314 P3d 721

Peter Gartlan, Chief Defender, and Zachary Lovett Mazer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Leigh A. Salmon, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

**HADLOCK, J.**

Defendant was charged with two counts of unlawful delivery of methamphetamine, ORS 475.890, two counts of unlawful possession of methamphetamine, ORS 475.894, and one count each of unauthorized use of a vehicle, ORS 164.135, and possession of a burglary tool or theft device, ORS 164.235. Before trial, defendant moved to suppress evidence of text messages found on a cell phone that was initially searched without a warrant and later searched again after the police had obtained a warrant. The trial court denied the motion on the ground that defendant did not assert a privacy interest in the phone. During trial, defendant moved for a mistrial after a police officer testified that he had asked defendant his name and defendant had replied that he "didn't want to say anything" to the officer. The court denied that motion as well. Defendant was convicted on all counts. On appeal, he assigns error to the trial court's rulings on the two motions. We agree with defendant that the trial court erred in denying the motion to suppress, but do not agree that it erred in not declaring a mistrial. Accordingly, we reverse the judgment with respect to the two counts of delivery of methamphetamine, remand for a new trial on those counts and for resentencing, and otherwise affirm.

The facts material to this appeal are not in dispute. On March 23, 2011, Eugene Police Officer Trent Magnuson responded to a report that employees at a motel had discovered two men passed out in a room that was undergoing maintenance and was not available for rent. The motel manager opened the room for Magnuson. Defendant was asleep on the bed, and the other man was asleep on the floor. An LG cell phone was lying on the bed next to defendant. On a table, Magnuson found $785 in cash, a note, and a small leather coin pouch. The note read, "Babe, went on drive to serve some sacks [and] pick up money. Call me. XOXO. *Here is breakfast. *I took a gram out! Gaby." A clear baggie was sticking out of the coin pouch, and Magnuson could see a crystalline substance in it that he believed was methamphetamine.

Magnuson woke defendant up. Defendant said that his girlfriend, Gibson, had arranged for them to stay in the motel room, though he did not know the details of the arrangement. Defendant told Magnuson that the money on the table and the cell phone belonged to him, but he denied that the coin pouch was his. Magnuson opened the coin pouch and found 11 small baggies. Eight of the baggies were unused, two had methamphetamine residue in them, and one contained what later tests showed to be nearly two grams of methamphetamine, which Magnuson considered to be "a little bit more" than a typical "user amount."

Another officer conducted a records check on defendant and his companion and learned that both had outstanding arrest warrants. Both men were arrested. Further searching revealed a syringe, a methamphetamine pipe, and a plastic tube used for snorting the drug. The officers seized the items that they had found, including the cell phone. Defendant was evidently released at some point thereafter.

A few days after defendant's arrest, a forensic examiner, Steven Williams, examined the cell phone and found over 150 saved text messages. Williams evidently believed that a search warrant authorized the examination of the cell phone, but, in fact, no warrant had been issued. In a report documenting what he found, Williams quoted two of the saved text messages, which appeared to pertain to the sale of drugs and stolen property. Williams's report was not acted on at that time.

A few weeks later, on April 25, 2011, Eugene Police Officer Kyle Keyser saw Gibson's car parked at a motel. Another warrant for defendant's arrest was outstanding at that time, and Keyser knew that defendant was associated with that car, so he stopped and watched the area. A few minutes later, defendant and Gibson came out of one of the motel rooms and walked away. Keyser and several backup officers followed on foot, trying to catch up to them. Keyser called out to defendant and asked him to stop. Defendant looked back several times but initially kept walking. After Keyser ordered him to stop a few more times, defendant complied. Keyser handcuffed him and took him into custody

based on the arrest warrant. At some point, Keyser asked defendant what his name was, and defendant replied that he "didn't want to say anything to [him]."

After arresting defendant, Keyser searched his pockets and found a baggie containing a little over two grams of methamphetamine, a methamphetamine pipe, $170 in cash, a set of keys to a car that was later discovered to have been stolen, some tools commonly used to break into cars, and Gibson's Blackberry cell phone. Keyser put defendant in the back of his patrol car and then questioned Gibson. Defendant yelled at Gibson several times to stop talking. When Keyser had finished interviewing Gibson, defendant called her over and told her, "Turn the phone off and get another number. Turn your phone off and get a new phone. Same number." A later search of Gibson's phone revealed approximately two dozen text messages sent or received between April 7 and April 25, 2011, that pertained to the sale of drugs and several other messages that appeared to relate to stolen property. At least two of the drug-related messages were clearly either to or from Gibson. None of the drug-related messages was expressly to or from defendant, though in one, an incoming message, the sender referred to the recipient as "bro," perhaps suggesting that it was intended for defendant.[1] The remaining drug-related messages, however, were not specific as to whether they were sent by, or intended for, defendant or Gibson. Defendant had clearly sent or received other text messages that did not relate to drugs or stolen property, and Gibson testified at defendant's trial that both she and defendant used her phone.

After defendant was taken to the police station, the police obtained a warrant to search the motel room that defendant and Gibson had been staying in. In the room, they found items consistent with drug use and distribution, including a package of small baggies. They also found a notebook that contained a list labeled "people who owe us $$$," with names and dollar amounts, and another, similar list written on motel stationery.

---

[1] That text message stated, in part, "I would like to purchase a shot. My ride could overheat and die at any time, bro."

On August 11, 2011, Detective Julie Smith sought a warrant to search the LG cell phone that Williams had earlier examined. In her affidavit in support of the warrant, Smith stated, among other things, that Williams had examined the phone and "discovered data on the phone pertaining to the manufacture and delivery of controlled substances." The warrant was issued, and Smith searched the phone's contents. She found around a dozen text messages sent or received between February 25 and March 12, 2011, pertaining to the sale of drugs.

Defendant was charged with the offenses stated at the beginning of this opinion. One count of delivery of methamphetamine was charged as a commercial drug offense. On the first day of trial, defendant made an oral motion to suppress the evidence taken from the LG cell phone, based on Williams's warrantless examination of it. The state argued that the later-obtained search warrant "cured" any illegality in Williams's examination. The trial court denied the motion on the ground that defendant had not claimed a privacy interest in the phone, which the court viewed as a "predicate requirement for someone to try to assert an argument that they've been unlawfully searched or seized or their property has been unlawfully searched."

At trial, the state presented evidence of the facts described above. While examining Keyser, the state elicited that defendant had declined to speak to the officer following his arrest on April 25:

"Q.  Did you ask him what his name was?

"A.  I did.

"Q.  Okay. And what did he respond, if any?

"A.  To get his exact quote I'd have to refer to my report, but he told me that he didn't—didn't want to say anything to me."

Defendant moved for a mistrial, but the court denied the motion.

Defendant's theory at trial with respect to the charges of delivery of methamphetamine was that Gibson alone had been dealing the drug and that he had simply

been a user. The jury ultimately convicted defendant on all counts. This appeal followed.

In his first assignment of error, defendant challenges the trial court's denial of his motion to suppress the evidence derived from the LG cell phone. Defendant argues that the trial court erred in placing the burden on him to assert a privacy interest in the phone. He contends that the state has the burden to show that a defendant *lacks* a privacy interest in an item searched by the police, which the state did not do in this case. Defendant goes on to assert that, because the phone was first searched without a warrant in violation of Article I, section 9, of the Oregon Constitution, the state was required to show that the illegality did not taint the evidence derived from the phone by proving that the police would inevitably have obtained the same evidence, that they obtained it by means independent of the illegal search, or that the evidence was otherwise attenuated from the illegal search.

The state does not defend the trial court's reasoning, but argues for affirmance on an alternative ground. *See Outdoor Media Dimensions Inc. v. State of Oregon,* 331 Or 634, 659-60, 20 P3d 180 (2001) (an appellate court may affirm a trial court ruling that was "right for the wrong reason"). In the state's view, the suppression motion was properly denied because, even if all references to Williams's unlawful examination of the phone were excised from Smith's affidavit, the affidavit furnished probable cause to issue the warrant. According to the state, the analysis that defendant asserts on appeal—that the state was required to, and failed to, prove that the evidence was admissible based on inevitable discovery, independent source, or attenuation—is the wrong analysis.[2]

We agree with defendant that the trial court erred in denying the suppression motion on the ground that defendant did not assert a privacy interest in the phone. It is true that "courts will suppress evidence only when a *defendant's* rights under Article I, section 9, have been violated." *State*

---

[2] The state also contends that defendant failed to preserve any argument with respect to the analysis that he asserts on appeal and, in all events, that any error in denying the suppression motion was harmless. We reject those contentions without discussion.

*v. Brown*, 348 Or 293, 298, 232 P3d 962 (2010) (emphasis in original). A defendant's rights are not violated if the defendant abandoned his or her possessory or privacy interests in an item before it was searched, but it is the state's burden to show that the defendant is not entitled to suppression because he or she abandoned those rights. *State v. Tucker*, 330 Or 85, 90-91, 997 P2d 182 (2000). The defendant is not required to assert a privacy interest in order to invoke the protections of Article I, section 9, and "a defendant's denial of a protected interest is not necessarily dispositive of whether the state has met its burden of proving the validity of a warrantless search." *Tucker*, 330 Or at 91; *see also State v. Morton*, 326 Or 466, 469-70, 953 P2d 374 (1998) (the defendant was entitled to challenge police officers' seizure of a container, even though she vehemently denied ownership, given that she had possessed the container shortly before the police officers seized it). Here, the circumstances in the motel room do not suggest that defendant had abandoned any interest in the LG cell phone, which was in defendant's immediate proximity when he was arrested. Rather, the *only* reason that the trial court denied the suppression motion was because defendant had not claimed a protected interest in that phone. Under *Tucker* and *Morton*, the trial court erred in denying the suppression motion on that ground.

As noted, the state makes a "right for the wrong reason" argument, contending that defendant was not entitled to suppression because the search warrant affidavit furnished probable cause even without the information obtained through the earlier, warrantless search of the phone. The state's proffered analysis is inapposite. The question is not simply whether the second search was supported by probable cause. As defendant asserts, when the state seeks to introduce evidence obtained from property that was initially searched unlawfully, the question is whether the evidence is tainted by the unlawful search. *See State v. Johnson*, 335 Or 511, 520-21, 73 P3d 282 (2003) (where evidence was searched pursuant to a warrant after having been subjected to an unlawful warrantless search, the state must prove that the evidence was not tainted by the unlawful search). If the defendant establishes a minimal factual nexus between the evidence and the unlawful search, the burden shifts to

the state to prove that the evidence was not tainted by, for example, proving that police officers inevitably would have discovered the evidence even if the unlawful search had not occurred. *Id.* (the state must show that the evidence would inevitably have been discovered, was discovered through independent means, or that its discovery was attenuated from the illegality).

Here, the state does not contend that the original, warrantless search of the phone was lawful or that defendant has failed to establish a minimal factual nexus between that search and the evidence in question. Nor has the state raised an "inevitable discovery" argument, either below or on appeal, or otherwise sought to establish that the initial unlawful search did not taint the later-discovered evidence.

In short, defendant has established that the trial court erred in ruling that he was not entitled to suppression because he did not claim a privacy interest in the LG cell phone. The sole alternative argument for affirmance that the state advances on appeal—that the second, warrant-based search was proper because the warrant was supported by probable cause—lacks merit. Because the state does not raise a meritorious ground for affirming the trial court's ruling on defendant's motion to suppress, we must reverse that ruling and remand for a new trial on the two charges of unlawful delivery of methamphetamine.[3]

We turn to defendant's second assignment of error, in which he challenges the trial court's denial of his mistrial motion based on Keyser's testimony that, following his arrest, defendant said that he "didn't want to say anything" to Keyser. Defendant argues that a witness may not refer to the fact that the defendant exercised a constitutional right, including the right to remain silent. According to defendant, the trial court abused its discretion by denying the motion or, at a minimum, by declining to give a curative instruction—even though defendant did not request one—because Keyser's testimony told the jury that defendant knew that he was guilty of some unspecified criminal offense and did not want to be identified. Defendant asserts that it is inferable that

---

[3] Defendant does not contend that the denial of the suppression motion prejudiced him with respect to any of the other charges.

the prosecutor's conduct was deliberate, noting that Keyser's answer showed that defendant's statement appeared in Keyser's police report, with which defendant contends the prosecutor was familiar.

The state responds that Keyser's testimony did not prevent defendant from having a fair trial. The state notes that Keyser made the statement in the context of describing defendant's arrest on the outstanding warrant. In the state's view, the jury likely understood the testimony as suggesting nothing more than the fact that defendant was aware of the warrant for his arrest.

When reviewing the denial of a mistrial motion, we bear in mind that the "trial judge is in the best position to assess the impact of the complained-of incident and to select the means (if any) necessary to correct any problem resulting from it." *State v. Wright*, 323 Or 8, 12, 913 P2d 321 (1996). Accordingly, a motion for a mistrial is addressed to the sound discretion of that court, and we will not find an abuse of discretion unless the effect of the improper comment was to deny the defendant a fair trial. *State v. Simonsen*, 329 Or 288, 300, 986 P2d 566 (1999), *cert den*, 528 US 1090 (2000); *State v. Farrar*, 309 Or 132, 164, 786 P2d 161, *cert den*, 498 US 879 (1990). Error in admitting evidence that a defendant exercised the right to remain silent is prejudicial if the evidence comes "in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury." *State v. Smallwood*, 277 Or 503, 505-06, 561 P2d 600, *cert den*, 434 US 849 (1977). Conversely, if such adverse inferences are unlikely, the allusion to a defendant's constitutional right does not create reversible error. *State v. Beisser*, 258 Or App 326, 340, 308 P3d 1121 (2013).

It is possible to infer, as defendant asserts, that the prosecutor may have intended to elicit Keyser's statement about defendant not "want[ing] to say anything," given that defendant's statement appeared in Keyser's report, with which the prosecution was presumably familiar. But the point of a mistrial is not to punish counsel; it is to ensure that the defendant receives a fair trial. *State v. Atkinson*, 28 Or App 909, 917, 562 P2d 978 (1977). Even when a prosecutor intentionally makes or elicits comments on a defendant's exercise of constitutional rights, those comments can create

reversible error only to the extent that they likely prompted the jury to draw adverse inferences about the defendant's guilt. *See State v. White*, 303 Or 333, 341-42, 736 P2d 552 (1987) (when a prosecutor deliberately includes information about the defendant's exercise of constitutional rights in the state's opening statement, the question remains whether the jury was likely to draw inferences prejudicial to the defendant, thus depriving the defendant of a fair trial).

In this case, we conclude for two reasons that the jury was unlikely to draw adverse inferences regarding defendant's guilt from Keyser's testimony about defendant's statement that he "didn't want to say anything." First, nothing in the lead-up to that testimony suggested that the point of the prosecutor's question or Keyser's response was to illustrate that defendant knew that he was guilty of the crimes for which he was on trial. Defendant did not invoke the right to remain silent in response to a potentially incriminating question by the police. *Cf. State v. Veatch*, 223 Or App 444, 460, 196 P3d 45 (2008) (mistrial was required where the jury was informed that the defendant, on trial for driving under the influence of intoxicants, had invoked the right to counsel after being asked whether he would submit to a potentially incriminating breath test). Rather, Keyser's reference to defendant's statement came in the context of testimony about defendant's arrest on the outstanding warrant. Thus, we agree with the state that the jury most likely would infer, if anything, that defendant's desire not to speak with police related to his knowledge that he had an outstanding warrant on other charges, and not to his knowledge of guilt regarding new crimes.

Second, the reference to defendant's statement that he "didn't want to say anything" was isolated—neither the prosecutor nor any witness referred to it again. Thus, this is not a case in which the prosecutor focused the jury's attention on defendant's invocation of constitutional rights, as often has been true in cases in which we and the Supreme Court have held that a mistrial was required. *See, e.g., White*, 303 Or at 336 (mistrial required where prosecutor told jury in opening statement that the defendant "was called to testify [in another trial] but refused to do so"); *State v. Halford*, 101 Or App 660, 662-63, 792 P2d 467 (1990) (trial court

abused its discretion in denying the defendant's mistrial motion after the prosecutor made comments that "specifically drew the jury's attention to the fact that defendant did not testify"). Rather, this is more like cases in which we and the Supreme Court have affirmed trial courts' discretionary decisions not to declare mistrials, based on the passing nature of the reference to the defendant's exercise of a constitutional right. *See, e.g., State v. Larson*, 325 Or 15, 24-25, 933 P2d 958 (1997) (affirming trial court's denial of mistrial motion in part because the prosecutor "made only a single reference" to the defendant's choice not to testify); *State v. Pratt*, 316 Or 561, 581-83, 853 P2d 827, *cert den*, 510 US 969 (1993) (a witness's statement that "everybody knows that [the defendant has] been on death row," in penalty phase of aggravated-murder trial, did not require mistrial where the trial court found that "the mention of defendant being on death row was 'isolated and made in passing' and that the state 'did not capitalize on the disclosure in any way'"); *Beisser*, 258 Or App at 341 (trial court had discretion to deny the defendant's mistrial motion when an officer made "only a single comment" about the defendant's refusal to meet with her and "[n]either the officer nor the prosecutor referred to the comment again").

Under the circumstances, the trial court was faced with a question that it could decide either way. The court—which, again, was in the best position to assess the potential prejudice—could reasonably conclude that the jury was unlikely to draw adverse inferences of guilt from Keyser's single reference to defendant's statement that he did not want to talk to Keyser, given the context in which defendant made that statement and the fact that Keyser mentioned it only once and the state did not capitalize on it in any way. Accordingly, the trial court did not abuse its discretion by denying the motion for a mistrial. Nor can we say that the potential for prejudice was such that the court was required to give a curative instruction *sua sponte*. Accordingly, we reject defendant's second assignment of error.

Judgment as to Counts 1 and 2 reversed and remanded; remanded for resentencing; otherwise affirmed.