Submitted February 11, reversed and remanded July 22, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRYCE ANDREW McKEE,
*Defendant-Appellant.*

Yamhill County Circuit Court
13CR00221; A155292

356 P3d 651

Robert C. Williamson argued the cause and filed the brief for appellant.

Pamela J. Walsh argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

DUNCAN, P. J.

## DUNCAN, P. J.

In this criminal case, defendant appeals the trial court's judgment convicting him of one count of driving under the influence of intoxicants (DUII), ORS 813.010. On appeal, defendant assigns error to the trial court's denial of his motion to suppress evidence that a sheriff's deputy obtained after following defendant onto farm property owned by defendant's father. Defendant argues that the deputy's entry onto the property violated Article I, section 9, of the Oregon Constitution.[1] As explained below, the trial court erred in its analysis of whether the deputy's entry violated Article I, section 9, because it failed to determine whether the state carried its burden of proving that a reasonable person would have believed that he or she could enter the private farm property without permission, as the deputy did. Therefore, we reverse and remand.

We review the trial court's denial of defendant's motion to suppress for errors of law, and we are bound by the trial court's express and implicit findings of fact, provided there is constitutionally sufficient evidence in the record to support the findings. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993); *State v. Tegland*, 269 Or App 1, 3, 344 P3d 63 (2015). Stated in accordance with that standard, the relevant facts are as follows.

On the night of the incident for which defendant was charged, a sheriff's deputy was on patrol in a rural area where there had been three reported burglaries in the preceding weeks. The burglaries involved, among other things, the theft of gas, tools, and batteries from vehicles. At approximately 11:00 p.m., the deputy saw a truck, which defendant was driving, and began following it. Neither the truck nor defendant was associated with the reported burglaries. The deputy testified that he "probably would have followed any vehicle * * * for an amount of time."

---

[1] Article I, section 9 provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The deputy followed defendant for approximately one mile and he did not see defendant commit any traffic violations. Defendant then turned onto a farm property. The deputy followed defendant onto the farm property "simply to ask why [defendant was] there." The property was fenced, but there were two driveways to the property from the road on which defendant and the deputy had been driving, and the driveways were not gated. There were barns on the property, and there was a "No Trespassing" sign on the side of the barn closest to the driveway that defendant and the deputy used.

Defendant parked near a gas pump which was directly underneath a large security light. The deputy parked his patrol car behind defendant's truck but did not block the truck. Defendant got out of his truck, and, immediately thereafter, the deputy got out of his patrol car. The deputy then saw defendant walk "down the driver's side of the [truck], leaning against [it]." It appeared to the deputy that "there was some reason that [defendant] needed to use the truck for balance—maybe to correct his balance."

The deputy asked why defendant was on the farm property, and defendant answered that it was his family's farm and he was there to get gas. The deputy continued his conversation with defendant and noticed that defendant smelled of alcohol and his speech was slurred. Based on those observations, the deputy began investigating defendant for DUII.

Defendant's father is the current owner of the farm property, and his family has owned the property for approximately 20 years. At the hearing on defendant's motion to suppress, defendant's father testified that, in addition to the "No Trespassing" sign on the barn, there are other "No Trespassing" signs posted throughout the property, including "one at the driveway entrance." Defendant's father also testified that the family had posted the signs and fenced the property in order to exclude the public. One reason the family posted the signs was because there is a lake on the property and they wanted to restrict access to the lake for safety and insurance reasons. Defendant's father also noted that there is a culvert around the front of the property.

The deputy testified that he believes he has the authority to enter property on which "No Trespassing" signs are posted if he has a reasonable suspicion of criminal activity on the property. When asked why he followed defendant onto the farm property, the deputy testified that, "in fairness to the property owner, it—it's almost my responsibility to go and check, because * * * of the time of night, * * * the area that [the truck] came from and went to[.]"

At the close of the hearing, defendant argued that the deputy did not have reasonable suspicion to believe that defendant was engaged in criminal activity; he contended that, "[a]ll [the deputy] knows is there's a car out in the country, it's late at night, pulls onto a piece of property, posted No Trespassing, and decides to enter and inquire." Defendant further argued that the deputy could not enter the property unless he did so pursuant to a warrant or an exception to the warrant requirement because the property was "posted with an intent to exclude the public."

For its part, the state argued that the deputy's entry onto the farm property did not constitute an "invasion of privacy." The state also argued that the deputy's encounter with defendant did not become a stop until the deputy had reasonable suspicion to believe that defendant had committed DUII.

The trial court denied defendant's motion to suppress, ruling that the deputy's entry onto the farm property was lawful because the deputy had "some reasonable suspicion" to justify contacting defendant "[e]ven on private property." The trial court explained:

> "I think the trespass signs are * * * kind of a red herring. * * * I'm also not completely sure that the No Trespass signs, under these circumstances, then, would exclude a law enforcement officer, who has this reason to go onto the property. It's not probable cause. In fact, one might actually argue he has a duty to go onto the property, to at least look into this."

The trial court further ruled that the deputy's actions on the farm property did not constitute a stop until the deputy had developed reasonable suspicion to initiate a DUII investigation.

After the trial court denied his motion, defendant entered a conditional guilty plea, reserving his right to appeal the trial court's ruling on the motion. *See* ORS 135.335(3) (a defendant may enter a conditional guilty plea to reserve the right to appeal an adverse determination on a pretrial motion).

On appeal, defendant renews his argument that, by entering the farm property, the deputy violated Article I, section 9.[2] Defendant does not dispute the legality of the actions the deputy took after entering the property; he does not challenge the trial court's ruling that, after entering the property, the deputy did not stop defendant until he had reasonable suspicion that defendant had driven under the influence of intoxicants. Thus, the only issue on appeal is whether the deputy violated Article I, section 9, by entering the farm property.

The state argues that the deputy did not violate Article I, section 9, by entering the farm property. But the state does not defend the trial court's reasoning. Instead, the state asks us to affirm the trial court's ruling for an alternative reason. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (an appellate court may affirm for an alternative reason when (1) the evidentiary record is sufficient to support the alternative basis, (2) the alternative basis is legally correct, and (3) the reasons for the trial court's decision are either erroneous or unnecessary in light of the alternative basis for affirmance).

The state recognizes that, contrary to the trial court's reasoning, the "No Trespassing" signs were not a "red herring." If a person manifests an intention to exclude the public from private property outside the curtilage of a residence by, for example, posting signs or erecting fences, a law enforcement officer cannot enter the property based solely

---

[2] In his brief, defendant mentions the Fourth Amendment to the United States Constitution, but, because his arguments are based solely on Article I, section 9, we consider only whether Article I, section 9, requires suppression. *See State v. Kinkade*, 247 Or App 595, 599 n 1, 270 P3d 371 (2012) (declining to address Fourth Amendment claim where the defendant made a "passing reference in his opening brief to the Fourth Amendment" but did not develop a "separate argument under the federal constitution").

on reasonable suspicion; the officer's entry must be justified by a warrant or an exception to the warrant requirement. *State v. Dixson/Digby*, 307 Or 195, 212, 766 P2d 1015 (1988) ("[I]f land is fenced, posted or otherwise closed off, one does not enter it without permission or, in the officers' situation, permission or a warrant."). As the Supreme Court explained in *Dixson/Digby*, for the purposes of Article I, section 9, a person has a protected privacy interest in property outside the curtilage of a residence if the person manifests an intention to exclude the public from the property:

> "An individual's privacy interest in land he or she has left unimproved and unbounded is not sufficient to trigger the protections of Article I, section 9. Thus, it is not sufficient that the property in question is privately owned, or that it is shielded from view by vegetation or topographical barriers, because those features do not necessarily indicate the owner's intention that the property be kept private. A person who wishes to preserve a constitutionally protected privacy interest in land outside the curtilage must manifest an intention to exclude the public by erecting barriers to entry, such as fences, or by posting signs."

*Id.* at 211-12. In this case, if defendant's family manifested an intention to exclude the public from the farm property, then the deputy could not enter the property unless he did so pursuant to a warrant or an exception to the warrant requirement. Thus, contrary to the trial court's reasoning, the "No Trespassing" signs were not a "red herring" because, if the signs adequately manifested an intent to exclude the public, then the deputy could not enter the property based solely on "some reasonable suspicion" of criminal activity.

Because the trial court's reasoning was erroneous, we turn to the state's proffered alternative basis for affirmance, that defendant did not have a protected privacy interest in the farm property because his family had not taken sufficient steps to exclude the public from the farm property.[3]

---

[3] In the trial court, the state did not dispute that defendant had an interest in the farm property. As the state acknowledges in its brief, "it did not raise an issue regarding whether defendant lived with his family or had any interest in the property" and, as a result, the state "does not raise an issue regarding defendant's interest in the property" on appeal.

The state, as the proponent of the evidence that resulted from the deputy's warrantless entry onto private property, bore the burden of proving that defendant lacked a protected privacy interest in the property. *See State v. Tucker*, 330 Or 85, 88-89, 997 P2d 182 (2000) ("[I]n the context of a warrantless search, a defendant is not required to assert a protected property or privacy interest on which the state intruded."); *State v. Knox*, 160 Or App 668, 673, 984 P2d 294, *rev den*, 329 Or 527 (1999) ("[T]he state has the burden of proving the negative proposition that no interest of the defendant's was involved."); *see also* ORS 133.693(4) ("Where the motion to suppress challenges evidence seized as the result of a warrantless search, the burden of proving by a preponderance of the evidence the validity of the search is on the prosecution."). As we explained in *State v. Howard/ Dawson*, 204 Or App 438, 441, 129 P3d 792 (2006), *aff'd*, 342 Or 635, 157 P3d 1189 (2007), when a defendant moves to suppress evidence on the ground that the evidence is the result of a warrantless search by government officials, the state must demonstrate that the government officials' actions did not violate Article I, section 9. "The state can meet that burden in either or both of two ways." *Id.* Specifically, "the state can show that a defendant had no protected privacy or possessory interest in the property" or "that the circumstances of the search * * * fit within an exception to the warrant requirement." *Id.* at 441-42; *see also State v. Galloway*, 198 Or App 585, 591, 109 P3d 383 (2005) (the state bore the burden of proving that the defendants lacked a protected privacy interest in their garbage). Here, the state's only claim is that defendant did not have a protected privacy interest in the farm property; the state does not argue that the deputy's entry onto the property was justified by an exception to the warrant requirement.

Whether a property owner or occupant has manifested an intention to exclude the public from property outside the curtilage of a residence depends on the particular actions that the owner or occupant has taken. *See State v. McIntyre/Pereira*, 123 Or App 436, 440, 860 P2d 299 (1993), *rev den*, 318 Or 351 (1994) ("[C]ourts must consider all surrounding circumstances * * * to determine the residents' intent."). As mentioned, a person can "preserve

a constitutionally protected privacy interest in land outside the curtilage" of a residence by taking steps to exclude the public from the property. *Dixson/Digby*, 307 Or at 211. Those steps may include posting signs and erecting fences. *Id.* at 212. Whether such steps are sufficient to give a reasonable person notice that entry onto the property is prohibited depends upon, among other things, the nature of the property and the characteristics and locations of the signs and fencing. *See State v. Roper*, 254 Or App 197, 202, 294 P3d 517 (2012), *rev den*, 353 Or 714 (2013) ("Whether the signs on an individual's property are sufficient to manifest intent to exclude the public depends on the factual circumstances in each case. For example: How far are the signs from the entrance to the property? How large is the type on the signs? Were the signs obvious or obscured? Did the officers notice the signs? Did the officers look for the signs?").

For example, in *Roper*, we held that the defendant had excluded the public from his property, including his driveway, by fencing the property and posting "No Trespassing" signs on, and adjacent to, a gate across the driveway to the property. 254 Or App at 201-02. Based on that holding, we further held that law enforcement officers who drove down the property's driveway violated the defendant's Article I, section 9, rights, even though the gate to the driveway was open. *Id.*[4] In contrast, in *State v. Gorham*, 121 Or App 347, 349, 353, 854 P2d 971, *modified on recons*, 123 Or App 582, 859 P2d 1201, *rev den*, 318 Or 171 (1993), we held that the defendant, who had posted "No Trespassing" and "No Hunting" signs on trees in a fenced field adjacent to his driveway, had not restricted public access to the driveway. Therefore, we concluded, it was not a violation of Article I, section 9, for law enforcement officers to drive down the driveway.[5] *Id.* at 353.

---

[4] *See also State ex rel Juv. Dept. v. Reeves*, 163 Or App 497, 499, 503-04, 988 P2d 433 (1999) (property owner had a protected privacy interest in his property, including his driveway, where he had fenced the property and posted multiple "Keep Out - No Trespassing" signs on the fence and a "Private Road" sign adjacent to the property's driveway); *State v. Poulos*, 149 Or App 351, 353, 356-57, 942 P2d 901 (1997) (signs adjacent to property's entrance and along its driveway sufficiently expressed an intent to exclude the public from entering the driveway).

[5] *See also State v. Cam*, 255 Or App 1, 6, 296 P3d 578, *modified on recons*, 256 Or App 146, 300 P3d 208, *rev den*, 354 Or 148 (2013) (officers did not violate

In this case, defendant argued that his family had manifested an intention to exclude the public from the farm property by fencing it and posting "No Trespassing" signs, but the trial court, when analyzing the legality of the deputy's entry onto the property, focused only on whether the deputy had reasonable suspicion that defendant was engaged in criminal activity. As a consequence, the trial court did not make factual findings regarding the characteristics of the property, including its fencing and signage. For example, it did not make any findings regarding the size and legibility of the "No Trespassing" sign on the barn, nor did it make any findings regarding the locations of the other signs that defendant's father mentioned, including the one at "the driveway entrance." Such factual findings—which are relevant to whether the state carried its burden of proving that an objectively reasonable member of the public would have believed that he or she could enter the private farm property without permission, as the deputy did—are for the trial court to make in the first instance. *McIntyre*, 123 Or App at 441 (trial courts are required to make factual findings relevant to whether an officer's entry onto private property was legal). Therefore, we must reverse and remand for further proceedings. *See State v. Cruz-Renteria*, 250 Or App 585, 586, 280 P3d 1065 (2012) (where a defendant's conditional guilty plea is predicated on a suppression ruling that was erroneous in part, appellate court must reverse and remand for further proceedings).

Reversed and remanded.

---

Article I, section 9, by entering through an open gate onto property that was posted as "Private Property" because "posting of a sign indicating that property is private does not in and of itself suggest that visitors to the property are excluded"); *State v. Gabbard*, 129 Or App 122, 124, 128, 877 P2d 1217, *rev den*, 320 Or 131 (1994) (signs reading "Beware of Dog" and "Keep Out" did not manifest an intent to exclude the public where signs were not adjacent to the driveway and were not seen by the officers who entered the property; "No Trespassing" sign on a boundary fence "was inadequate to exclude visitors who would use the [defendant's] driveway to make contact with the occupants of the house").