Submitted October 23, 2015, reversed and remanded August 3, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KEITH HENSLEY JONES,
*Defendant-Appellant.*

Coos County Circuit Court
13CR1696; A156828

380 P3d 1132

Richard L. Barron, Judge.

Peter Gartlan, Chief Defender, and David Sherbo-Huggins, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Pamela J. Walsh, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## GARRETT, J.

Defendant appeals a judgment of conviction for unlawful possession of methamphetamine, ORS 475.894. In a single assignment of error, defendant contends that the trial court erred in denying his motion to suppress evidence seized during a warrantless search. The trial court based the denial on its conclusion that defendant had abandoned any protected interests in the property when he failed to claim it prior to the search. Defendant argues that his failure to affirmatively claim the property in response to a police inquiry was insufficient, under the circumstances, to show an abandonment of his interests in the property. For the reasons explained below, we agree with defendant and, accordingly, reverse and remand.

The facts are undisputed. While on patrol in Coos County, Trooper Mullins saw a van parked on the side of a gravel road. Defendant was bent over near the rear of the van; as Mullins pulled closer, defendant "abruptly stood up" and got into the driver's seat. Suspecting either criminal activity or that the van had broken down, Mullins pulled over to investigate. As Mullins approached the van, defendant and a passenger got out of the van and began to walk towards him. When Mullins asked defendant what was going on, defendant responded that the van's registration tags were "messed up" and began rubbing the tags with his thumb. Mullins noticed that the tags appeared to have been pieced together from several torn stickers and colored in with a blue marker. Based on that observation, Mullins ran a license plate check on the van and discovered that the van's plates were not registered.

In explanation, defendant told Mullins that he had borrowed the van from his friend, Matsen. Another officer contacted Matsen at his home and learned that Matsen had lent defendant the van, but that defendant was supposed to have returned it three days earlier. Matsen gave the officers permission to search and secure the van until Matsen could retrieve it. At the suppression hearing, Mullins testified that he believed that Trooper Crutchfield, who had arrived to assist Mullins with the investigation, asked defendant if he had any belongings in the van:

"[PROSECUTOR]: And * * * prior to searching it, Trooper Mullins, did you ask the defendant if he had any items in the van?

"[MULLINS]: Um, I believe Trooper Crutchfield had asked him that.

"[PROSECUTOR]: Did you become * * * aware of what the defendant was claiming in the van as his?

"[MULLINS]: Yes.

"[PROSECUTOR]: What was he claiming as his in the van, at that time?

"[MULLINS]: It was, in substance, all the bags with clothing in it. There was trash bags, maybe—maybe some duffel-type bags in there."

Mullins then searched the van, excluding the items claimed by defendant. That search led to the discovery of a container holding methamphetamine, which defendant later admitted belonged to him.

Before trial, defendant moved to suppress all evidence obtained during the search of the van on the ground that the warrantless search violated Article I, section 9, of the Oregon Constitution. The trial court denied defendant's motion to suppress, concluding that defendant had abandoned "his privacy interest in [the container] when he was given clear and obvious opportunity to identify that which he didn't want the police officer to look in." Defendant was convicted after a stipulated facts trial.

On appeal, defendant argues that the search was unlawful under Article I, section 9, because he neither consented to the search nor abandoned his privacy interests with respect to the container. The state responds that the search of the container was permissible either because Matsen gave consent to search the van or because, as the trial court concluded, defendant abandoned his interests in the container by failing to claim it when given the opportunity to do so.

Under Article I, section 9, "[s]ubject to certain specifically established and limited exceptions, a warrantless search by the police of a person's property is *per se* an

unreasonable interference with the person's interests in the property." *State v. Pilgrim*, 276 Or App 747, 750, 369 P3d 434 (2016). One such exception to the warrant requirement is consent, voluntarily given by someone with the authority to do so. *State v. Paulson*, 313 Or 346, 351-52, 833 P2d 1278 (1992). Additionally, a person's Article I, section 9, rights are not violated if that person abandons his or her possessory or privacy interests in an item before it is searched. *State v. McClatchey*, 259 Or App 531, 538, 314 P3d 721 (2013); *see also Pilgrim*, 276 Or App at 750 ("[A] person may relinquish the person's constitutionally protected interests in an object by communicating to the police through actions or words an intention to relinquish those interests."). Whether a defendant relinquished his constitutionally protected interests in an article of property involves both factual and legal questions, which we review in the same manner as we review other search or seizure questions under Article I, section 9. *State v. Cook*, 332 Or 601, 607, 34 P3d 156 (2001). That is, we defer to the trial court's findings of historical fact if evidence supports them, but assess anew whether those facts are sufficient to constitute abandonment. *Id.*

A disclaimer of *ownership* of an item does not necessarily demonstrate an abandonment of *all* constitutionally protected interests therein. *Cook*, 332 Or at 607-08 ("[B]ecause Article I, section 9, protects both possessory and privacy interests in effects, property law concepts of ownership and possession are relevant, though not always conclusive, in the factual and legal determination whether a defendant relinquished all constitutionally protected interests in an article of property."). The state, as the proponent of the evidence from a warrantless search, bears the burden of proving that the defendant abandoned his constitutionally protected interests in the property. *State v. McKee*, 272 Or App 372, 378, 356 P3d 651 (2015).

At the outset, defendant is correct that Matsen's consent to search the van was insufficient to justify the warrantless search of defendant's belongings inside the van. *See State v. Will*, 131 Or App 498, 504, 885 P2d 715 (1994) (for purposes of Article I, section 9, consent must be granted by someone with actual authority); *see also State v. Edgell*, 153

Or App 108, 112, 956 P2d 988 (1998) ("[The owner's] actual authority to consent to a search of the car did not give her actual authority to consent to a search of [the] defendant or her belongings.").[1] Accordingly, the search of the container was lawful only if, as the trial court determined, defendant abandoned his constitutionally protected interest in that property.

On that question, our recent decision in *Pilgrim* is instructive. The defendant in *Pilgrim* was a passenger in a car whose driver gave officers permission to search it. Prior to the search, an officer asked the defendant whether anything in the car belonged to him. In response, the defendant "reached into the car and retrieved a bag of candy." *Pilgrim*, 276 Or App at 750. The officer interpreted the defendant's actions to mean that the bag of candy "'was the only thing of value that belonged to [defendant] in the car.'" *Id*. A subsequent search of the car revealed a bag that contained a theft device, which the defendant admitted was his. The defendant moved to suppress, and the trial court denied the motion, concluding that the defendant abandoned his interest in the property. We reversed, explaining that, in order to "relinquish a person's constitutionally protect[ed] interests in an object *** the person must unequivocally manifest an intention to do that." *Id*. at 753. We observed that, although a defendant's *statement* disclaiming any interest in an object may suffice to communicate such an intention, a defendant's silence does not. *Id*. From those premises, we concluded that the defendant's act of removing candy from the car, without more, communicated only that the candy belonged to him, and not that the defendant had no interest in everything else in the car. *Id*.

That reasoning applies in this case. At the suppression hearing, the state elicited testimony that Mullins

---

[1] The state also argues that, once Matsen consented to the search of the van, Mullins could reasonably have believed that police had the right to search the van and all of its contents. That "apparent authority" rationale was rejected by the Supreme Court in a decision after briefing in this case was completed. *See State v. Bonilla*, 358 Or 475, 486, 366 P3d 331 (2015) (holding that that the concept of "apparent authority" is inconsistent with the rights guaranteed under Article I, section 9, which requires consent to be "given by (or lawfully on behalf of) the person who holds the protected privacy interest").

"believe[d]" that Crutchfield had asked defendant if he had any items in the van, and that Mullins "bec[a]me aware" that defendant was claiming several bags of clothing. Based on that testimony alone, the trial court concluded that defendant had abandoned his interests in any remaining property in the car. We conclude that Mullins's testimony was insufficient to carry the state's burden of showing that defendant abandoned his property interests in the container. At most, the testimony established that, in response to questioning by Crutchfield, defendant asserted an interest in certain items inside the van. *Pilgrim* instructs that affirmatively claiming an interest in certain items is insufficient by itself to support an inference, by negative implication, that the person has abandoned his or her interests in other items. Rather, the record must support a determination that the person "unequivocally manifest[ed] an intention" to relinquish all constitutionally protected interests in such items. *Pilgrim*, 276 Or App at 753.

The state analogizes this case to others where we have held that a defendant's disclaimer of ownership in property may, under certain circumstances, constitute abandonment. *See, e.g., State v. Standish*, 197 Or App 96, 104 P3d 624, *rev dismissed as improvidently allowed*, 339 Or 450 (2005) (search of bags found in a vehicle driven by the defendant did not violate his protected interests where the defendant denied ownership and failed to assert any protected nonownership interest in the bags); *State v. Linville*, 190 Or App 185, 78 P3d 136 (2003), *rev den*, 337 Or 34 (2004) (concluding that the defendant abandoned his privacy interest in a pack of cigarettes when, after being asked whether anything in the car belonged to him, he replied "no"). Unlike in those cases, however, the record here is devoid of *any* evidence that defendant disclaimed ownership of the container. Rather, the state's argument appears to be premised on the idea that, by asserting an ownership interest in some items inside the van, the defendant disclaimed any interest in others by negative implication. That argument fails, for the reasons explained above. *See Pilgrim*, 276 Or App at 753.

Based on the foregoing, we conclude that the search of the container was unlawful. Consequently, the trial court

erred in denying defendant's motion to suppress evidence found during that search.

Reversed and remanded.