No. 575 June 24, 2026 857

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JERRY TAGA ATALIG,
aka Jerry Taga Atalig II,
*Defendant-Appellant.*

Marion County Circuit Court
23CR42867, 22CR50051, 22CR44326, 22CR44338,
22CR60930; A184386 (Control), A184387, A184388,
A184389, A184390, A184391, A184392, A184393, A184394

Jennifer K. Gardiner, Judge.

Submitted May 13, 2026.

Frances J. Gray filed the brief for appellant.

Dan Rayfield, Attorney General, Paul L. Smith, Interim Solicitor General, and Megan Mizuta, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

EGAN, J.

Reversed and remanded.

**EGAN, J.**

Defendant appeals a judgment of conviction for first-degree theft, ORS 164.055, and felon in possession of a firearm, ORS 166.270, in Marion County Case No. 23CR42867, as well as judgments revoking probation in four related cases. Defendant assigns error to the trial court's denial of his motion to suppress firearms discovered during a warrantless search of a cross-body bag and to the denial of his motion for judgment of acquittal on the felon-in-possession counts. We affirm the trial court's denial of defendant's motion for judgment of acquittal but agree that the trial court erred in denying the motion to suppress and, therefore, reverse and remand.

*Motion for Judgment of Acquittal.* Defendant assigns error to the denial of his motion for judgment of acquittal on the felon-in-possession charges. Because the assignment provides the possibility for greater relief to defendant, we start there.

In reviewing a trial court's denial of a motion for judgment of acquittal, we consider whether "any rational trier of fact, accepting reasonable inferences and making reasonable credibility choices, could have found the essential elements of the crime beyond a reasonable doubt." *State v. Lupoli*, 348 Or 346, 366, 234 P3d 117 (2010). In doing so, we review the facts in the light most favorable to the state, including all reasonable inferences. *Id.*

A person commits the crime of felon in possession of a firearm if the person has been convicted of a felony and knowingly possesses a firearm. ORS 166.270; *State v. Owen*, 369 Or 288, 296-97, 505 P3d 953 (2022) ("The state must prove that the defendant acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."). Thus, the state was required to prove that defendant was aware that the object he possessed was a firearm.

Here, the charges stemmed from the discovery of two firearms in a cross-body bag in defendant's possession. Defendant argues that the evidence established only that he possessed the cross-body bag, not that he knew it contained

firearms. Defendant relies on *State v. Schodrow*, 187 Or App 224, 230, 66 P3d 547 (2003), for the proposition that knowingly carrying a container does not, by itself, establish knowledge of its contents.

Viewed in the light most favorable to the state, however, the evidence permitted a reasonable inference that defendant knew the bag contained firearms. The state presented video evidence showing defendant wearing the small cross-body bag across the front of his torso immediately before entering the motel room. The bag contained two loaded firearms, magazines, and a holster. From the size of the bag and the size and quantity of the items inside it, a rational factfinder could infer that defendant was aware of the nature of the contents while wearing the bag against his body. *See State v. Clowdus*, 326 Or App 36, 39, 530 P3d 525 (2023) ("Jurors also may rely on common experience or common knowledge in making reasonable inferences.").

In addition, the state presented evidence that defendant made inconsistent statements concerning the cross-body bag. Deputy White testified that defendant said that the bag "wasn't his" and that he had "never seen it," despite surveillance footage showing defendant wearing the bag and carrying it upstairs to the motel room. White also testified that defendant explained that he had traded marijuana for the bags and brought them from the car to the room. From that evidence, a rational factfinder could infer that defendant's statements were evasive or false and could consider that evidence as circumstantial evidence of guilt.

Taken together, the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that defendant knowingly possessed the firearms. Therefore, we affirm the trial court's denial of defendant's motion for judgment of acquittal.

*Motion to Suppress.* In his first assignment of error, defendant challenges the denial of his motion to suppress the firearms discovered during the warrantless search of the cross-body bag. Defendant argues that, although he disclaimed ownership of the bag, the state failed to establish that he relinquished all constitutionally protected interests

in it, including any possessory interest, for purposes of Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. We agree.

Defendant preserved the issue by moving before trial to suppress the firearms evidence under both constitutional provisions. Defendant argued that his disclaimer of ownership did not amount to abandonment because he retained a possessory interest in the bag.

In reviewing motions to suppress and the trial court's ruling, "[w]e defer to the trial court's findings of historical fact if there is evidence to support them, but assess anew whether the facts as found by the trial court are sufficient to constitute abandonment." *State v. Standish*, 197 Or App 96, 98, 104 P3d 624, *rev dismissed as improvidently allowed*, 339 Or 450 (2005).

In support of its ruling, the trial court found that on September, 2023, a man reported that items had been stolen from his vehicle overnight. Some of those items contained Apple AirTags. He tracked one AirTag to a grocery store parking lot in the vicinity of a black Toyota Corolla that was missing a front license plate. Other AirTags led him to a Motel 6 in the vicinity of room 237. Deputy White met the man at the Motel 6. While there, White observed defendant drive into the parking lot in the same car that the owner of the stolen goods had seen in the grocery store parking lot.

Defendant exited the vehicle, placed a black crossbody bag over his shoulder, and walked upstairs and into room 237. White knocked on the door to that room and a woman answered. Almost simultaneously, defendant emerged from the bathroom. From the doorway, White could see in plain view some of the items that had been reported stolen, including a folder bearing the name of the owner of those goods. Defendant was detained.

The woman who had answered the door (ND) told White that she had rented the room for herself and defendant and consented to a search of the room. She first separated her belongings onto one bed and those she believed belonged to or that she associated with defendant onto the

other bed. Defendant was asked for consent to search the items on the second bed, and he consented to a search of specific items that he identified as belonging to him. Defendant specifically identified the bags and other belongings that were his, while disavowing ownership of other bags, including the cross-body bag that he had been wearing when he entered the room. He claimed to have obtained the bags in a trade for marijuana but insisted that they did not belong to him. White searched the cross-body bag and found that it contained two loaded firearms.

In denying defendant's motion to suppress, the trial court concluded that ND gave valid third-party consent to search the room but lacked authority to consent to a search of anything not belonging to her. Defendant then gave consent to search his belongings, specifically identifying what was his and twice unequivocally disavowing ownership in the cross-body bag.[1] Therefore, the trial court determined, based on the totality of the circumstances, that defendant had "relinquished any constitutional interest" in the cross-body bag for purposes of the search and denied the motion to suppress.

Article I, section 9, protects against unreasonable searches and seizures. *State v. Fair*, 353 Or 588, 602, 302 P3d 417 (2013). A warrantless search is *per se* unreasonable unless it falls within a recognized exception to the warrant requirement. *State v. Pilgrim*, 276 Or App 747, 750, 369 P3d 434 (2016). However, when a person abandons a constitutionally protected interest in property, police may search the property without a warrant or applicable exception. *State v. Gatto*, 304 Or App 210, 217, 466 P3d 434 (2020).

Whether a defendant abandoned a constitutionally protected interest depends on whether the defendant's "statements and conduct demonstrated that he relinquished all constitutionally protected interests in the property." *Id.* A disclaimer of ownership does not invariably establish abandonment, but it may do so when considered in context. *Standish*, 197 Or App at 100-03. Further, "affirmatively

---

[1] The officer testified that he asked defendant for consent to search everything on the second bed. The record is silent as to defendant's precise answer to that question. The record establishes that defendant did consent to the search of the items that he identified as his. To the extent that his consent might have extended to everything on the bed, the state failed to make a record of that.

claiming an interest in certain items is insufficient by itself to support an inference, by negative implication, that the person has abandoned his or her interests in other items." *State v. Jones*, 280 Or App 135, 140, 380 P3d 1132 (2016). Rather, the record must support a determination that the defendant unequivocally manifested an intention to relinquish protected interests in the property. *Id*. That includes not only ownership interests but possessory and privacy interests as well. *State v. Cook*, 332 Or 601, 608-09, 34 P3d 156 (2001).

In the case at hand, the state principally relies on defendant's disclaimer of ownership of the cross-body bag. But "a disclaimer of ownership does not necessarily constitute abandonment of all protected interests in property[.]" *Standish*, 197 Or App at 100. A person's possessory and privacy interests are sufficient to invoke constitutional protections, even if they do not own the property. *Cook*, 332 Or at 607. A disclaimer of ownership may be relevant to the analysis insofar as it "may trigger an obligation by the defendant to assert a protected interest other than ownership in the property where no possessory or privacy interest may be inferred from the circumstances." *Standish*, 197 Or App at 101-02. But, again, the inference of a possessory or privacy interest is enough to merit constitutional protection.

In concluding otherwise, the trial court reasoned that this case was controlled by *Standish* and distinguishable from *Pilgrim* and *Jones* because defendant expressly denied ownership of the cross-body bag after identifying other items as his.

But *Standish* involved materially different circumstances than those in this case. There, the defendant stated that he was driving a borrowed truck and further stated that he did not know who owned the bags in the truck or what was in them. 197 Or App at 102-03. Under those circumstances, no possessory or privacy interest reasonably could be inferred. Here, by contrast, defendant expressly explained that he had obtained the remaining bags, including the cross-body bag, in a trade involving marijuana and that he had transported them from the vehicle into the motel room. Those statements permitted an inference that

defendant retained a possessory interest in the bags even while disclaiming ownership of them.

In that respect, this case aligns more closely with *Cook*. There, the defendant told police that clothing and a bag near a dumpster were not his but explained that he had been sorting through them to find usable items. 332 Or at 608. The Supreme Court explained that, although the defendant had disclaimed ownership, his statements did not permit police reasonably to conclude that he intended "to relinquish all his constitutionally protected interests in those items." *Id.* at 609. The court further emphasized that the defendant relinquished physical possession of the property only after an officer instructed him to move away from it and that compliance with that instruction did not demonstrate an intent "permanently to relinquish possession of the items or the privacy interests that accompanied the right to possess them." *Id.*

The same reasoning applies here. Defendant was separated from the cross-body bag only after White detained him and placed him in a patrol car downstairs from the motel room. Defendant had carried the bag into a private motel room rented for his and ND's joint use moments earlier. And, although defendant denied owning the bag, he explained that he had acquired it in a trade and had transported it into the room. Under those circumstances, defendant's disclaimer of ownership did not unequivocally manifest an intent to relinquish all possessory and privacy interests in the bag.

Nor do the circumstances otherwise demonstrate abandonment. Unlike the defendant in *Standish*, defendant did not disclaim knowledge of the bags or disclaim any connection to them. Rather, his statements and conduct reflected continued possession and control over the bags. And, as in *Cook*, defendant's separation from the property occurred only because the police removed him from the room after detaining him. 332 Or at 609.

The state argues that defendant's identification of some items as his and disclaimer of ownership of the remaining bags objectively communicated relinquishment

of any constitutional interest in those bags. But identifying some items as one's own does not, without more, establish abandonment of constitutionally protected interests in other items. *Pilgrim*, 276 Or App at 753; *Jones*, 280 Or App at 140. Here, the surrounding circumstances affirmatively support an inference that defendant retained a possessory interest in the cross-body bag.

Because the state failed to establish that defendant relinquished all constitutionally protected interests in the cross-body bag before it was searched, the warrantless search violated Article I, section 9. The firearms discovered during that search should have been suppressed.

The error was not harmless. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (recognizing that we reverse evidentiary error only when the error is harmful). The firearms evidence supplied the sole evidentiary basis for the felon-in-possession charges and furnished the basis for the probation revocations.

Considering our disposition under Article I, section 9, we do not separately address defendant's Fourth Amendment argument. We affirm the trial court's denial of defendant's motion for judgment of acquittal but reverse the court's denial of his motion to suppress evidence of the firearms discovered in the unlawful search of the cross-body bag.

Reversed and remanded.